NELLIE ANDERSON and F. M. ANDERSON, Appellants, v. LOTTIE BLAKESLY and L. C. BLAKESLY, Appellees.

**Adoption of children:** STATUTE. The statute authorizing the exe-
1 cution of adoption papers by the mayor of a city or the clerk of the district court, where a child has been abandoned by its parents, does not confer authority to so act upon the mayor of a town.
Weaver, J., dissenting.

**Same:** INEFFECTIVE ARTICLES GIVEN FORCE AS A CONTRACT. Although
2 an instrument may be insufficient to effect the statutory adoption of a child, still, where it has been long recognized and acted upon, and the consideration therefor has been rendered, it may be given force as a contract, under which the child may assert an interest in the estate of its adoptive parent. And such is the effect given the instrument in the instant case.

**Estates of decedents:** WIDOW'S HOMESTEAD RIGHT: EVIDENCE. A
3 widow's homestead right is one of occupancy only and may be lost by abandonment, and when once lost the party entitled to the fee may enforce such right unincumbered by the homestead. The evidence in this case shows an abandonment of the homestead right by subsequent marriage and residence in a foreign state, although but for a brief time.

**Same:** DOMICILE OF WIFE. The common law rule that the legal set-
4 tlement and domicile of the wife follows that of the husband prevails in this state.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

FRIDAY, MAY 17, 1912.

ACTION in equity for the partition of real estate. Bill dismissed, and decree entered against the plaintiffs on cross-bill. Plaintiffs appeal. The material facts are stated in the opinion.—*Reversed.*

*W. M. Jackson* for appellants.

*McCoun & Burrell* for appellees.

WEAVER, J.—In the year 1886 one J. T. McColm and his wife were residents of the town of Gravity in Taylor county, Iowa. On June 5th of that year they adopted, or undertook to adopt, as their child the plaintiff herein, Nellie Anderson, who was then an infant. The instrument by which this adoption was sought to be effected was duly acknowledged and recorded and was in the following words:

Gravity, Iowa, June 5, 1886. Know all men by these presents, I, T. J. Davis, mayor of Gravity, Taylor county, Iowa, having under my care, by the authority of . . . in me vested in me by the laws of the state of Iowa, an absconded child known to us only by the name of 'Nellie' which is in the town of Gravity, Taylor county, Iowa, and has been for several weeks. Therefore, I, T. J. Davis, mayor of the town of Gravity as grantor and J. T. McColm, and Lottie M. McColm, his wife, as grantees do make and enter into the following agreement: That I, T. J. Davis grant and give unto the said J. T. McColm and Lottie M. McColm, his wife, the aforesaid child, which is about to be the lawful and adopted child, who shall hereafter be called and known by the name of Nellie M. McColm and shall be the lawful heir of the aforesaid J. T. McColm and Lottie M. McColm. They shall have the same authority over, and be responsible for the said Nellie M. McColm to the same extent as though she was their lawful child by birth. T. J. Davis, Mayor of Gravity, Iowa, Grantor, J. T. McColm, Lottie M. McColm, Grantees.

Lottie M. McColm, who was one of the parties thereto, is defendant in this proceeding and named in the record "Lottie Blakesly." Upon the execution of said instrument, McColm and wife took the child into their home, gave her their name, and cared for her as a daughter until she married her coplaintiff, Anderson. J. T. McColm died intestate in 1904 leaving surviving him his wife, Lottie, and the plaintiff, Nellie. No children were born of the deceased, and if the sufficiency of the adoption above mentioned be assumed, the property and estate of which he died seised. or possessed descended to the widow and adopted daughter in the proportion provided by statute. The estate, except the homestead occupied by the family in the town of Gravity, appears to have been exhausted in the payment of debts and widow's allowance. According to her testimony and that of the administrator of the estate, the widow. elected or desired to avail herself of her satutory right to occupy the homestead, but the record reveals no writing to that effect. She continued to live and maintain her home there until the year 1906, when she married one H. H. Robinson of the state of Colorado, with whom she went to Denver in that state. She remained in Colorado part of the time until 1908, when she procured a divorce from Robinson in the courts of that state, and then returned to Gravity and resumed her occupancy of the homestead property. Since then she has married her codefendant, C. L. Blakesly, and with him has continued, to make her home in the same place. In the divorce proceedings in Colorado, defendant filed her duly verified petition stating, among other things, that she was then and for some time had been a citizen and resident of the city of Denver in the state of Colorado. The decree rendered in her favor found that she was a bona fide resident of Denver, Colo., at the commencement of said action. In the year 1908 the plaintiff began an action against the defendant for the partition of the homestead property. The peti-

tion therein alleged the death of J. F. McColm and that he left as his only heirs at law the defendant, his widow, and the plaintiff, his adopted daughter. To this action defendant appeared and filed an answer admitting the allegations above referred to. For some reason said proceedings were voluntarily dismissed, and thereafter the present suit was instituted asking the same relief.

The defendant contests the demand for partition upon two grounds: First, that the article or deed of adoption is void and of no effect, and plaintiff thereby acquired no right of inheritance from McColm; and, second, that after the death of McColm defendant not only elected to retain the homestead, but also waived her dower in his property other than the homestead and permitted said other property to be applied and exhausted in the payment of the debts of the deceased, and that she is therefore equitably entitled to have the homestead set apart to her in fee. By an amendment to her petition plaintiff alleges that, if for any reason the deed of adoption be held insufficient under the statute, it still constitutes a valid contract under which she may claim and does claim a right to demand and receive the property of which McColm died seised or possessed, subject only to the statutory rights of the defendant as his surviving wife. She further alleges that the right to occupy the homestead was abandoned and lost by the defendant, thereby leaving the fee of the property subject to plaintiff's rights under the contract of adoption free from any claim of homestead in the defendant. The trial court found in defendant's favor and quieted the title in her as absolute owner of the property.

I. The deed of adoption describes the child as one who had been abandoned by her parents, and the consent to such adoption is given by the mayor of the town of Gravity, where she was then living. The principal objection made to the validity of this deed is the fact that the consent appears to have

1. ADOPTION OF CHILDREN: statute.

been given by the mayor of a town when the statute provides that it shall be given by the mayor of the "city" where the child is living or by the clerk of the district court of the proper county. It is said that a "town" is not a "city" within the meaning of the law, and therefore the adoption, otherwise perfect in form and substance and acted and relied upon both by the foster parents and the child, is void. This objection a majority of the court is disposed to hold fatal to the validity of the instrument as a statutory adoption, but the writer dissents therefrom. *Elma v. Carney,* 4 Wash. 419 (30 Pac. 732); *State v. Commissioners,* 4 Wash. 6 (29 Pac. 938); *Burke v. Monroe,* 77 Ill. 614.

The question next arises whether, assuming the deed to be insufficient to effect a statutory adoption, it may still be given force and effect as a contract by virtue of which

2. SAME: ineffective articles given force as a contract.

plaintiff may assert a valid claim to an interest in the estate of J. T. McColm, deceased. The law upon the point thus raised has been considered by this court in the comparatively recent case of *Chehak v. Battles,* 133 Iowa, 107. The opinion there written by Ladd, J., enters into an exhaustive review of the authorities and reaches a conclusion which we think must govern the present appeal. In that case, as in this, there was an attempt by a man and wife to enter into a statutory deed or article adopting an infant girl; but because of an insufficient acknowledgment and failure to place the same of record, it was held unenforceable as a statutory adoption. It appearing, however, that the parties had acted upon faith of such instrument, the child had been taken into the home and family of her supposed foster parents and given just reason to believe that her status as a child and heir had been duly established and that she had carried out her part of the compact by rendering service, love, and companionship to them during her period of minority, it was held that the

writing evidenced an enforceable contract by virtue of which, when the other parties thereto died intestate, she became entitled to share in the property left by them in the proportion which would have been hers had the articles of adoption been validly executed and recorded. This right, it was decided, was not one of technical inheritance, which can be created by statute only, but a contract right which a court of equity would enforce. This precedent also presents another analogy to the case at bar, in that there, also, the only heritable property left by the deceased was a homestead, and the claim of the adopted child to share therein equally with the children of the deceased when the widow's right of occupancy had ended was sustained. The decision has since been approved and followed in *Stiles v. Beed,* 151 Iowa, 86. The principle underlying that decision finds abundant support in the numerous precedents cited herein, and the result of its application is so clearly equitable that we have no disposition to overrule it or to weaken its authority. In the case at bar there is not the slightest doubt that the defendant and her husband now deceased intended to adopt the plaintiff in the full statutory sense and in good faith believed they had done so. So far as McColm himself is concerned, he died without discovering the error made in the writing. The defendant herself acted under the same belief, and even after this litigation began she filed a pleading admitting the adoption, and it was not until later in the history of the case did she or some one in her behalf ascertain that a flaw existed in the instrument, whereupon she adjusted her defense to make use of the advantage so afforded.

A contract so made, so long recognized and acted upon, and the consideration for which has been duly rendered, should not be open to repudiation at the whim of the promisor without some available remedy to the promisee. The remedy applied in the *Chehak* case is at once practicable and, while not complete, effectuates sub-

stantial justice. The case of *Godine v. Kidd*, 64 Hun, 585 (19 N. Y. Supp. 335), is not unlike this in its essential facts. There the court says: "Even though we assume that none of the arrangements between the parties was of original binding obligation, yet the subsequent performance and fulfillment thereof by defendant and her parents, so that thereby the Knapps actually got all they bargained for, would furnish a sufficient consideration to support their promises as effectually as if the agreement had been of original binding obligation." See, also, to the same effect, *Burns v. Smith*, 21 Mont. 251 (53 Pac. 742, 69 Am. St. Rep. 623). The agreement in this case was to establish the plaintiff in a relation in which she would have the rights of a child which would include the right of inheritance. This was not done effectually, and, while the court can not execute the intent and by its judgment establish plaintiff in the legal status of a child of the foster parents, it can give to her a remedy against the estate of the grantor in the deed of adoption thereby affording her a measure of compensation for that of which she was deprived without fault on her part. What she would have inherited had the undertaking to adopt been made effective is the entire estate left by T. J. McColm subject to the rights of the defendant as his widow, and the award of nothing less than this will make good to her the pecuniary loss she has sustained.

II. Accepting this as the true measure of plaintiff's right in the premises, we have only to inquire what is the nature and extent of defendant's right, if any, as the surviving wife of J. T. McColm. She makes

3. ESTATES OF DECEDENTS: widow's homestead right: evidence.

no claim in pleading or in evidence that she ever elected or demanded to receive her distributive share in the estate of the deceased. On the contrary, she alleges in pleading and testifies as a witness that she intended to elect, and did in fact elect, to avail herself of her statutory right to occupy the home-

stead, and that if such election was not entered of record, it was by oversight and mistake. She insists that such election is sufficient in equity and should be so recognized by the court. Without affirming the sufficiency of such election as a proposition of law, its validity in this case may be conceded, and we shall dispose of the appeal on the theory that, when the estate of J. T. McColm was settled leaving the defendant in possession and enjoyment of the home property, she was entitled to a widow's homestead right therein. That right was one of occupancy only and could be effectually lost by abandonment. If abandoned, then the person entitled to the fee of the property could at once proceed to enforce her right to its use and enjoyment unincumbered by any just claim of homestead. It is the claim of plaintiff that defendant did definitely abandon the homestead. This is the only troublesome question in the case.

It is conceded that in the year 1906 defendant was remarried to one Robinson, a resident of Colorado. Immediately upon said marriage she went with her husband to that state, where she remained about four months, when she returned alone and lived for a time with the family of the tenant to whom she had leased the property in Gravity. Later she went back to Colorado, remaining there until she procured a divorce in 1908, when she once more returned to Gravity and resumed her home on the property in question. During her absence some of her furniture was left in the house in care of the tenant occupying it. Do these facts constitute an abandonment? We think it must be so held. The mere fact that she went away from the home and was gone for a few months, or even for a longer time, is not a decisive consideration, for the owner of a home may leave it and remain away for extended periods without forfeiting his privilege so long as the purpose served by his absence is of a temporary

character and he at all times retains the fixed purpose of returning thereto and resuming its use and enjoyment.

On the other hand, his removal therefrom for any length of time, no matter how short, with a settled purpose to quit its occupancy permanently and take up his domicile elsewhere, will operate as an effective abandonment.

Now, it is a fundamental principle of the common law governing the relations of husband and wife that, as a general rule, the home, legal settlement, and domicile of the latter follows that of the former, and we have no statute abrogating that rule. 10 Am. & Eng. Ency. of Law (2d Ed.) 32; *Harrison v. Harrison,* 20 Ala. 629 (56 Am. Dec. 227); *Henderson v. Ford,* 46 Tex. 627; *Johnson v. Johnson,* 75 Ky. 485; *McKenna's* case, 23 La. Ann. 369.

4. SAME: domicile of wife.

The "domicile" of a person has been defined as the place where "he has his true fixed permanent home and principal establishment to which whenever he is absent he has the intention of returning." Story on Conflict of Laws, section 41. And while domicile does not necessarily imply the existence of a homestead, it is difficult to see how a person having a legal domicile in one state can possess a right of homestead in another. It can not be presumed that a woman marries and takes upon herself the obligations and duties pertaining to that relation as a mere tentative or experimental venture with a mental reservation of purpose to return to her former home and status should her husband prove on closer acquaintance to be less than her fancy has painted him. In legal theory at least, she goes with him in the spirit of surrender and loyalty, saying by her conduct, if not by her words: "Whither thou goest, I will go; where thou lodgest, I will lodge; they people shall be my people, and thy God my God." If in these modern days that theory is not often exemplified in actual life, then so much the worse for actual life. The fact that the bride be a widow and

possesses a homestead right can make no difference with the principle, unless perhaps it is made a condition of the surrender that the newly organized family shall continue in the occupancy of her home and thereby preserve to her its continued enjoyment. But in the case before us there is no evidence that the parties ever contemplated such use of the homestead. The husband had long been a resident in another state, and immediately upon the marriage they proceeded thither and remained until for some reason with which we are not now concerned a separation took place resulting finally in divorce. That their dream of happiness was of short duration is not material. As we have already said, abandonment of the homestead depends not so much upon the length of time the claimant is absent, as upon the reasons for and circumstances of the absence. We think it must be said that, when defendant married, the home and domicile of her husband became hers, and we are bound to presume that, when she went with him to assume the legal status of wife in the foreign jurisdiction where he resided, she ceased to have home, domicile, or right of homestead in this state. Such being the case, her return and reoccupation of the property could not clothe her anew with the rights which she had thus abandoned. The plea of homestead contained in the defendant's answer does not therefore constitute a defense to plaintiff's claim. It follows of necessity that the court erred in denying plaintiff any interest in the property. By her pleadings in this case she limits her demands to the undivided two-thirds of the property, and, if we are correct in the conclusions already announced, she is clearly entitled to it.

III. We do not understand on what principle the trial court confirmed and quieted the fee title in the defendant. As we read the pleadings, defendant asserted no claim to anything more that the right of occupancy for life, and in no case could she be rightfully awarded the fee; but

even if the demand for such enlarged relief can be extracted from the allegations of the cross-petition, it is, as we have seen, without due support in the evidence. The decree below will be reversed, and cause remanded for decree to be entered in harmony with this opinion.— *Reversed.*