PETER BERGMAN, JR., Claimant, Appellee, v. HARRY CARSON et al., Defendants, Appellants; LAVINA BERGMAN, Administratrix.

No. 44717.

MARCH 7, 1939.

Sterling Alexander, for appellee, Peter Bergman, Jr.

Grover Neese, for Lavina Bergman.

F. J. Lund, for appellants, Harry Carson et al.

STIGER, J.—Plaintiff, Peter Bergman, Jr., seeks to establish his status as an adopted son of Peter Bergman, Sr., deceased. The trial court found for plaintiff and a decree was entered awarding him the status of an adopted son and his share as an heir of the decedent.

Plaintiff brought an action at law in the probate court to establish his right to inherit as an illegitimate child of deceased. Subsequently, by way of amendment, he filed his petition asking that he be adjudged an adopted son of deceased, that an adoption by estoppel be recognized by the court, and that the defendants, grandchildren of decedent, be estopped from disputing plaintiff's right to inherit as an adopted son. This petition stated a cause of action in equity.

With this amendment plaintiff filed an application to transfer the petition to be adjudged an adopted son of decedent to the equity docket for trial. Defendants filed a resistance to the motion to transfer, and, at the same time, filed a motion to strike the petition in equity on the ground that the amendment "seeks to join two inconsistent and repugnant remedies, a law and equity action, in one action, whereas the original action was commenced at law". Subject to the motion to strike, defendants filed a motion to make the amendment more specific. Both motions were overruled and the motion to transfer the amendment to equity was sustained. Defendants then filed an answer to the petition in equity and the entire controversy was determined on the equitable issue.

While defendants' motion to strike was filed before they filed their answer as required by Code section 10963, the motion to transfer to equity was filed with the amendment. If the motion to strike the amendment on the ground of misjoinder of causes of action had been sustained, plaintiff had the privilege under the provisions of Code section 10965 of filing his amend-

ment as a separate petition and have the equitable action docketed and of proceeding to trial thereon without further service.

We do not perceive how defendants were prejudiced by the action of the trial court in overruling the motion to strike the amendment and sustaining the motion to transfer. The same result was reached as if the court had sustained the motion to strike and plaintiff had filed his amendment as a separate petition in equity. However, error, if any, in the ruling on the motion to strike the misjoined causes of action and on the motion for more specific statement, was waived by the filing of the answer. Crow v. Casady, 191 Iowa 1357, 182 N. W. 884; Thompson v. Erbes, 221 Iowa 1347, 268 N. W. 47.

Plaintiff's petition stated a cause of action for adoption by estoppel and there was no error in overruling the motion to strike on the ground that it did not state a cause of action of adoption by estoppel.

Peter Bergman, Sr., a native of Sweden, died intestate in 1937 in Hamilton county, Iowa. In 1880, he married Ella Peterson, otherwise known as Ella Persdotter, in Sweden, who at the time of the marriage had a son known as Flaga Pete, who is plaintiff in this case.

Plaintiff introduced in evidence three church records from the parish of Ofvanaker, province of Gofleborg, Sweden, certified by the pastor of the church, under his seal, with a certificate from the consulate of Sweden that the exhibits were true translations of the records. These exhibits were birth, baptismal, and other records of the church. The records gave the name of the child, Peter, the mother's name, Ella Persdotter, her age and residence, the date of the marriage of Ella Persdotter and Peter Bergman, the date of the birth and baptism of the boy, Peter, and the name of the pastor who baptised him. In giving the name of the father, the several records read: "Peter Bergman (adoptive father)"; "Father's name unknown, adoptive father Peter Bergman." One exhibit shows the date of the emigration of Peter Bergman and wife to North America on December 29, 1882, and refers to the boy Peter as follows: "Her out of wedlock son, Peter, by the man adopted, born January 24, 1874."

The exhibits were from the Congregational Church book of Ofvanaker Parish for the years 1881-1885. The certificates to the exhibits were signed by the rector and church custodian.

The exhibits were admissible as ancient documents. They were in existence over 30 years, were obtained from the proper custody, and there was no suspicious appearance, thus meeting all the requirements of ancient documents. Bidwell v. McCuen, 183 Iowa 633, 166 N. W. 369.

In Wigmore on Evidence, volume 2, 2d., page 977, it is stated:

"Where a document purports to be so old that attesters cannot be supposed to be yet alive, the same ground for exemption exists. An 'ancient' document, in this sense, has long been defined by a fixed rule, i. e., a document purporting to be thirty years old. This rule applies not only to documents in general, but also to wills."

The statements made in the church records relating to this family that Peter Bergman was the adoptive father of plaintiff, the statements and conduct of Mr. Bergman subsequent to the marriage, the attitude of plaintiff towards Mr. Bergman, until the latter's death, furnished convincing proof of an understanding and agreement between Mr. Bergman and Ella Persdotter that he would adopt the plaintiff.

The history of the family and the attitude of Mr. Bergman toward the plaintiff subsequent to the marriage establish that Mr. Bergman recognized the relationship and performed all the obligations of such relationship.

At the time of the marriage, plaintiff was about 5 years old. He was immediately given the name of Peter Bergman, Jr., and the name of Flaga Pete was never heard again. From the time of the marriage, the attitude of Mr. Bergman toward plaintiff was that of a father. Plaintiff lived with his parents until his marriage at the age of 25 years. He contributed all his earnings to the family, paying them to his mother who was "banker for the family". He gave to Peter Bergman, Sr., the obedience, loyalty, affection, devotion and aid that a natural son would normally give his father, and Mr. Bergman reciprocated in kind.

Plaintiff's mother predeceased Mr. Bergman and he did not know until after the death of Mr. Bergman that he was not his natural father. Mr. Bergman referred to plaintiff as his own son. There were two other children, August and Bessie, and they lived together as brothers and sister. Mr. Berg-

man referred to plaintiff's children as his grandchildren. The obituaries of Mrs. Peter Bergman, Sr., and Bessie Carson, daughter of Mr. and Mrs. Bergman, published while Mr. Bergman was living, referred to plaintiff as a son of Mr. Bergman.

In the case of Morris v. Trotter, 202 Iowa 232, 234, 210 N. W. 131, 132, the court states:

"While we have frequently held that adoption may not be accomplished save by an observance of statutory requirements, we have also held that the right to property may be acquired under contractual provisions of a writing that falls short of a statutory instrument of adoption, or even under a parol contract, clearly established, where there had been part performance."

Chehak v. Battles, 133 Iowa 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140; Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; Anderson v. Blakesly, 155 Iowa 430, 136 N. W. 210; Young v. McClannahan, 187 Iowa 1184, 175 N. W. 26; Daily v. Minnick, 117 Iowa 563, 91 N. W. 913, 60 L. R. A. 840. See Bland v. Buoy, 335 Mo. 967, 74 S. W. 2d 612.

In the case of Roberts v. Roberts, 8 Cir., 223 F. 775, 776, the court in holding that proof of an oral agreement to adopt a child need not be proved by direct evidence where parties to the transaction, except the child, are dead, states:

"The argument by which we are asked to reverse the decree is that there was no direct and clear evidence of an agreement to adopt at the time Myra J. Roberts was received into the family of Charles J. Roberts. There is good reason why such evidence is wanting. All of the parties to the transaction are dead, and Myra J. Roberts was herself a babe at the time of the adoption. It seems to us that in such a case it is not necessary that the court first have direct proof of the making of the contract, and then proceed forward from the contract thus established to the conduct evidencing its existence. We think it is possible to reverse that process, and if the statements and conduct of the adopting parents are such as to furnish clear and satisfactory proof that an agreement of adoption must have existed, then the agreement may be found as an inference from that evidence. The decree is right, and it is affirmed."

The court, in the Roberts case, quotes from the case of

454

Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885, 85 Am. St. Rep. 480:

"That she took the place of an only daughter in the lives of Mr. and Mrs. Lynn, and performed her part as such, is the cold fact which the law regards as sufficient consideration to support the contract. How much she added to their happiness the law does not undertake to estimate. * * * Like a bud that has been cut from its natural stem and grafted into a foreign tree, she grew into the family and became a part of its very life. Everything that adoption contemplates was accomplished. It became a contract fully performed on her part, and the statute of frauds cannot be invoked to her injury."

In the case of Rucker v. Moore, 186 Ga. 747, 199 S. E. 106, 107, it is stated:

"A parol obligation by a person to adopt the child of another, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, with respect to any claim such child, as a child, may have against the estate of the obligor, undisposed of by will. Crawford v. Wilson, 139 Ga. 654, 78 S. E. 30, 44 L. R. A. (N. S.) 773."

The weight of the evidence shows that Peter Bergman agreed to adopt plaintiff, recognized the relationship, gave him his name, took him into his home, and treated him as his own son until his death. This is not an executory contract to adopt. Mr. Bergman received all the benefits of this relationship with plaintiff who well performed his duties to Bergman as a son.

Mr. Bergman would have been estopped, under these circumstances, from denying that he adopted plaintiff, and the right of plaintiff to inherit a share in the estate of Mr. Bergman, who promised to adopt him, is the same as it would be had he been adopted under judicial proceedings.

In the case of Chehak v. Battles, 133 Iowa 107, on page 117, 110 N. W. 330, on page 334, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140, the court states:

"It was said in Bray v. Mills, 23 Ind. App. 432, 54 N. E. 446, 55 N. E. 510, that the 'object of adoption is to place as near

as possible the child adopted in the place of a natural one; to give it the position in the family as a child both of the husband and wife, conferring on it rights and privileges of a child. Among other consequences the effect of adoption is to cast succession upon the adopted in case of intestacy of the adopting father.' After referring to the fact that modern legislation on the subject is based on the Code of Justinian, it is further said: 'The name of the child is changed. Its identity is lost in that of the adopting parents. It becomes, in all but blood, their child.' "

Plaintiff specifically claims in the suit that defendants, heirs at law of Peter Bergman, are estopped from denying that he is the adopted child of decedent and we agree with this contention.

In the recent case of Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237, the articles of adoption executed by the natural parents and foster parents of a child were relied on by the parties as legally complete but, in effect, were not sufficient to constitute articles of adoption. The child performed all the duties incident to a legal adoption. Justice Donegan, speaking for the court, in holding that full performance by the child created an adoption by estoppel binding on the foster parents and also on their heirs, states on page 1272, 252 N. W. on page 243:

"In the cases above cited in which heirs have been estopped from denying the legality of an adoption, it will be noted that the courts did not base the estoppel solely on the ground of the adjudication made in a legal proceeding, but in practically all of these cases great stress was given to the justice and the equities in favor of the adopted child. We see no reason why the justice and equities in favor of a child who has to the fullest extent performed all the duties and bestowed all the love and affection that the adopting parents would have received from a natural child are not just as real and persuasive in the case of a contract of adoption as they could possibly be if the adoption had been by judicial proceedings."

See Anderson v. Blakesly, 155 Iowa 430, 136 N. W. 210; Young v. McClannahan, 187 Iowa 1184, 175 N. W. 26; Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; McKeown v. Brown, State Treasurer, 167 Iowa 489, 149 N. W. 593; 27 A. L. R. 1365.

456

At the beginning of the above annotation in 27 A. L. R. 1365, on estoppel in pais to deny adoption of child, it is stated:

"The cases considering the matter are in substantial harmony in sustaining an estoppel in pais to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child." See cases cited in annotation.

Evidence of the oral contract and its performance is clear, satisfactory and convincing, defendants are estopped to deny that plaintiff is the adopted son of Peter Bergman, Sr., and the decree appealed from is affirmed.—Affirmed.

MITCHELL, C. J., and HALE, OLIVER, BLISS, SAGER, and MILLER, JJ., concur.