EILEEN VIOLA ALLEN VERMILLION, Appellee, v. OTTO SIKORA, Administrator, and HARRY P. MILBURN, Intervenor, Appellant.

EILEEN VIOLA ALLEN VERMILLION, Appellee, v. HATTIE REYNOLDS et al., Appellants, and OTTO SIKORA, Administrator.

No. 44280.

DECEMBER 12, 1939.

Don Barnes, B. L. Wick, and Robert F. Murray, for appellee.

Earl J. North and Chas. L. Benesh, for appellants.

STIGER, J.—Plaintiff brought a suit against the administrator of the estate of Eliza Ann Pratt, deceased, to establish her adoption by estoppel by Eliza Ann Pratt in which proceeding Harry P. Milburn, a collateral heir of decedent, intervened, and at the same time brought a suit to quiet title to real estate owned by decedent at the time of her death against the collateral heirs of decedent and her administrator. During the pendency of the proceeding in the lower court, Hattie

Reynolds, a sister of decedent, died and Harry P. Milburn, her son and executor, was substituted as defendant. The same allegations were made in both cases which were consolidated in the lower court. Plaintiff's claim was, in substance, that in October, 1905, when she was about 13 months old, her natural parents, Henry C. Allen and Dora Allen, entered into an agreement with Eliza Ann Pratt Allen and her husband, Joel H. Allen, that in consideration of the surrender of plaintiff to them they would adopt her and she would have all' the rights she would be entitled to if born to them in lawful wedlock and that it was understood and agreed upon that written articles of adoption would be executed between the natural and adoptive parents; that written articles were executed by plaintiff's parents and Mr. and Mrs. Allen; that she was surrendered to their custody and control pursuant to said agreement and from that time until plaintiff became of age and for some time thereafter she lived with them as their daughter; that plaintiff, in all respects during the period of her minority and until decedent's death in 1934, treated Mrs. Allen as a mother and Mrs. Allen treated her as a daughter. It does not appear that there was any relationship between plaintiff's natural parents and Mr. and Mrs. Joel Allen.

The trial court found there was an adoption by estoppel of plaintiff by Eliza Ann Pratt Allen, that the defendant heirs were estopped from asserting the adoption was invalid, quieted title to the real estate in plaintiff and ordered the administrator to deliver to plaintiff all personal property belonging to the estate afer paying the claims against said estate and costs and expenses of said administration. The heirs appealed.

Written articles of adoption were not introduced in evidence and there is no evidence that articles of adoption were entered into in conformity with either the laws of the state of Iowa or the state of Illinois.

Eliza Ann Pratt and Joel Allen were married in 1900 and were divorced in 1908. Mrs. Allen resumed her former name of Eliza Ann Pratt and she will be hereafter referred to as Mrs. Pratt. Allen made no claim to any interest 'in the property of his wife at the time of the divorce nor at any subsequent time.

Plaintiff's evidence is substantially as follows: Plaintiff,

daughter of Henry C. and Dora Allen, was born in September, 1904 in Bath, Illinois, and christened Fern Marion Allen. Soon after her birth her father deserted her mother and two older sisters. Dora Allen, being unable to care for her three children, placed an advertisement in a Peoria newspaper in the year 1905 stating she wanted a home for one or more of her children. In October, 1905, she received a letter from Eliza Ann Pratt stating that if Mrs. Allen would permit an adoption of the baby (plaintiff) and so advise her, that Joel Allen, her husband, would meet her at Havana, Illinois, on a certain date and get the plaintiff. She met Joel Allen as arranged. Allen · told her he was a traveling salesman and that he and his wife lived in Cedar Rapids; that they had no children and were well able to take care of the child and would give her a good home and education; that she would inherit their property. Joel Allen then produced adoption papers which Dora Allen signed and thereupon delivered the custody of plaintiff to Allen. Allen asked her where her husband was at that time and she told him that he was in Peoria.

In March, 1906, Mrs. Pratt wrote Mrs. Allen from Beacon, Iowa, that she was sending her a picture of plaintiff and that her husband was going to Illinois to ''get the Paper fix.''

It is undisputed that Mrs. Pratt obtained the custody and control of plaintiff when she was 13 months old and reared, educated and provided for her during her minority. Plaintiff's mother surrendered complete control over her to Mrs. Pratt. Henry C. Allen, father of plaintiff, testified that Mrs. Pratt and her husband, Joel Allen, ''hunted him up'' in Havana, Illinois, to persuade him to sign adoption papers. He did not sign the papers at that time and they saw him again about a month later at his place of business in Havana. He testified:

''They purported to be adoption papers. I cannot recall them word for word but I read them over and signed them. At that time my wife's signature, Dora Luella Allen, was on the papers and it was signed by Mrs. E. A. Allen and Harry J. Allen, if I remember correctly. They said the child was then in Cedar Rapids. They told me that Fern would inherit all their belongings and that they would give the child a good

home and see to it that she was well taken care of. I then signed the papers.''

Plaintiff's testimony is, in part, as follows: She lived in Mrs. Pratt's Cedar Rapids home. She thought that Mrs. Pratt and Joel Allen were her father and mother until Mrs. Pratt's death in 1934. When she was 8 years old Mrs. Pratt placed her in a Catholic school where she remained until she was 16 years of age. Mrs. Pratt paid all expenses of her education and maintenance. She saw Mrs. Pratt during week ends in Cedar Rapids and during the week she received an average of two letters a week from her. She left this school when 16 years old and went to the Cedar Rapids home of Mrs. Pratt who was then in Peoria. When 18 years of age she took full charge of the home, receiving directions in regard to the management of the place from Mrs. Pratt.

In 1925, she married Iver Gardner. At that time she was 21 years old. She divorced him in 1927 and returned to the Cedar Rapids home and lived with Mrs. Pratt for two years. She remarried Gardner in 1929 and after again divorcing Gardner she lived at Mrs. Pratt's Cedar Rapids home until she married Henry Vermillion. Plaintiff had a strong affection for Mrs. Pratt which feeling was reciprocated by her adoptive mother and she conducted herself towards Mrs. Pratt at all times in the manner of a natural daughter.

Mrs. Pratt referred to her as her daughter and was generous and kind to her. Several witnesses testified for plaintiff that Mrs. Pratt always introduced and referred to plaintiff as her daughter.

In 1932, Mrs. Pratt executed a will in which she created a trust fund for her former husband, Joel Allen, and upon the death of Allen the will provided that the trust continue until plaintiff was 50 years of age at which time the trust property was to be conveyed to her. Plaintiff and Allen were sole beneficiaries under the will. Plaintiff was referred to in the will as ''my daughter, Eileen Viola Allen.'' After plaintiff was given to Mrs. Pratt, her name was changed to Eileen Viola Allen.

The validity of this will is not in issue.

Evidence on the part of defendants tended to show that Mrs. Pratt did not agree to adopt plaintiff but only agreed

to raise, maintain and educate her; that plaintiff was told by several persons that she was not the daughter of Mrs. Pratt; that plaintiff was paid wages. There was evidence that Mrs. Pratt stated that plaintiff was no daughter of hers, which alleged statements, however, were made prior to the execution of her will in 1932 leaving her property to "my daughter, Eileen Viola Allen."

It appears plaintiff filed a claim for wages in the estate of defendants in the sum of $4,300. There is a conflict in the evidence on the question of a parol agreement to adopt plaintiff. Some of the witnesses for plaintiff and appellants were interested in the result of the case. There was, however, material evidence introduced by plaintiff that is undisputed. Mrs. Pratt referred to plaintiff in her will made in 1932 as her daughter to whom she left all of her property subject to a trust provision for her former husband. She paid for her education, maintained her very generously during her minority and aided her thereafter. After plaintiff's marriage, she returned and lived at Mrs. Pratt's Cedar Rapids home at various times. Plaintiff's father and mother completely abandoned her control and maintenance to Mrs. Pratt. About 5 months after plaintiff was given to the adoptive parents, Mrs. Pratt wrote plaintiff's mother from Beacon, Iowa, that "I will send baby's picture today, will wait here until we get the paper fix. Mr. Allen is going to Illinois tonight to tend to it."

The testimony offered by defendants which is most contradictory of plaintiff's evidence was furnished by Joel Allen. With reference to this witness it may be stated that Mr. North, one of the attorneys for appellants, testified that he understood "that James F. Pratt and Hattie Reynolds [brother and sister of Mrs. Pratt] entered into some contract with Joel Allen wherein he was to have some share of the Eliza Ann Pratt estate if they defeated the claim of Eileen Vermillion."

Appellant Harry Milburn testified:

"There was an agreement between me and Joel Allen and Mr. James F. Pratt, mother's brother, that we will share the estate equally if we can get it away from Eileen."

In arriving at our conclusion, we have given weight

to the decision of the trial court who had the advantage of observing the demeanor, conduct and appearance of the witnesses. The contract to adopt was, in our opinion, established with the certainty required in such cases, and was substantially performed by the parties. The acts of all the parties concerned were referable to the contract. Mrs. Pratt had the exclusive control of plaintiff from the time she was 13 months old and had the benefit of her services and companionship during her minority and at frequent intervals thereafter. Plaintiff performed all the duties and manifested the affection that Mrs. Pratt would have received from a natural daughter. We concur in the conclusion reached by the trial court that plaintiff believed Mrs. Pratt was her mother and treated her as her mother during the lifetime of Mrs. Pratt. We find there was an adoption of plaintiff by Mrs. Pratt by estoppel and the trial court was right in holding that the defendant heirs of Mrs. Pratt were estopped from denying the adoption. See Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237; Bergman v. Carson, 226 Iowa 449, 284 N. W. 442. The doctrine of adoption by estoppel has often been considered by this court and it is unnecessary to restate or rediscuss the principles on which the doctrine is based. See Chehak v. Battles, 133 Iowa 107, 110 N. W. 330, 8 L. R. A., N. S., 1130, 12 Ann. Cas. 140; Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237; Bergman v. Carson, 226 Iowa 449, 284 N. W. 442, and cases cited therein.

Appellants contend that assuming there was a contract for adoption it was an Illinois contract and that under the decisions of that state the parol contract was void under the statute of frauds and perjuries, Ill. Rev. Stat. 1939, chapter 59, section 1 et seq., and not in force in equity. Assuming that the contract was an Illinois contract, the recent decisions of the supreme court of Illinois on the question of adoption by estoppel are in substantial harmony with those of this state.

In the case of Winkelmann v. Winkelmann, 1931, 345 Ill. 566, 178 N. E. 118, 119, the court states:

"Oral agreements to adopt, not followed by legal adoption, have been held to be valid and enforceable, provided they are made by parties competent to contract, are based upon a sufficient consideration, are not objectionable as being within the

operation of the Statute of Frauds, and are not in contravention of some principle of public policy. Wallace v. Rappleye, 103 Ill. 229; Woods v. Evans, 113 Ill. 186, 55 Am. Rep. 409; Mould v. Rohm, 274 Ill. 547, 113 N. E. 991; 1 Corpus Juris, 1376, 1377, 1379. Where a child has fully performed its obligations under a contract to adopt and allowing the contract to remain unenforced would be inequitable, the child is entitled to a decree for specific performance, provided the contract be proven according to the standard of proof required. Hutton v. Busaytis, 326 Ill. 453, 158 N. E. 156. The Statute of Frauds does not apply to this adoption contract. Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885, 85 Am. St. Rep. 480; Lindsley v. Patterson (Mo. Sup.) 177 S. W. 826, L. R. A. 1915F, 680. Such contracts are not to be confused with contracts to will or convey property.''

To take a parol promise to convey real estate which has been partly performed out of the statute of frauds, part performance must be such that it would be a fraud on the promisee not to let the agreement be fairly performed. Stephens v. Collison, 313 Ill. 365, 145 N. E. 81; Weir v. Weir, 287 Ill. 495, 122 N. E. 868.

In the case of Chehak v. Battles, 133 Iowa 107, 112, 110 N. W. 330, 332, 8 L. R. A., N. S., 1130, 12 Ann. Cas. 140, the court expresses the principles announced in the case of Winkelmann v. Winkelmann, supra, in the following language:

''There is no such thing in cases like this as placing the parties in statu quo, and the remedy must be by specifically enforcing the contract or the denial of rights which have been fully earned, and in good conscience and justice ought to be enforced. The statute of frauds cuts no figure in the case, for part of the consideration, the surrender of the child, was paid at the time the agreement was executed.''

The case is affirmed.—Affirmed.

OLIVER, C. J., and MILLER, HALE, BLISS, and MITCHELL, JJ., concur.

SAGER, J., concurs in result.