PETER CAULFIELD, Appellant, v. ROSE C. NOONAN et al., Appellees.

No. 45343.

DECEMBER 31, 1940.

Bennett Cullison, George O. Hurley, Addison G. Kistle, and Paul E. Roadifer, for appellant.

Zacek & Nicholson, Andrew Bell, Robert J. O'Connor, and Lester C. Davidson, for appellees.

BLISS, J.—Since the judgment was upon the motion to dismiss the petition, as amended, we must go to that pleading for the facts. It alleges in count No. 1: that the defendants Rose Noonan and Matilda Cain are daughters of James and Mary Caulfield, and that Edward Caulfield, a son of James and Mary Caulfield, and a brother of Rose and Matilda, is deceased, and the defendant Tritz, is acting as the executor of his estate; that Edward never married and died after the death of both his parents, leaving neither wife, child, nor grandchildren, so that the *heirs* of his parents are the legal heirs of Edward, and they are his said sisters, and the plaintiff; that his sisters now claim that they are the sole surviving children of their parents, and deny that plaintiff is a child of said parents, and that plaintiff has any right, title, and interest in the property which Edward owned at his death, and said sisters by their claims have created a cloud on plaintiff's interest in said property; that about 1884, the plaintiff then being about three years old was sent to the home of James and Mary Caulfield, and the latter entered into a contract of adoption with his parents or guardian, with the purpose and intent of adopting the plaintiff as their son, with full rights of inheritance as though they were his lawful and natural parents; that said contract and articles have been lost or destroyed, but plaintiff is informed that they were in the possession of Edward prior to the latter's death; that he re-

mained in the home of James and Mary Caulfield until he reached his majority; that they gave him the name of "Caulfield", and so entered him in the schools, and in their church in which he was received and confirmed on their direction, and permitted him to be married under that name; that they at all times referred to him as their son, and as the natural brother of Edward, Rose and Matilda, and concealed from him till their death that he was not their natural son; that they exercised the same dominion and control over him as parents exercise over their children; that James Caulfield, acting as his father, hired his services out before he reached his majority; that he gave to James and Mary Caulfield the same obedience, love and services that a natural child gives to his parents, and since coming into their home he conducted himself as a dutiful and loving son; that Edward, Rose and Matilda referred to him as a brother, and he referred to them as brother and sisters; that by reason of the above-stated matters, the defendants are now barred and estopped to question the relationship of plaintiff to his parents, James and Mary, and to claim any rights adverse to him such as would vest in him as the adopted son of said parents; that plaintiff has no plain, speedy or adequate remedy at law to determine his status as child and heir of James and Mary Caulfield as against the adverse claims of the defendants. Under count No. 1 plaintiff prays for a decree determining his status as that of an adopted son of James and Mary Caulfield, and that any property rights growing out of such relationship be quieted in him as against the adverse claims of Rose and Matilda based upon the claim that they are the sole surviving children of James and Mary.

In count No. 2, plaintiff incorporates by reference all of the allegations of count No. 1, and in addition alleges: that Edward Caulfield was a natural son of James and Mary, and that during the time that Edward and plaintiff were members of the family, they rendered to each other the services, affection and duties of one brother to another; that said Edward died May 10, 1938, leaving no spouse nor issue, and that by reason of the matters alleged, the plaintiff is entitled to inherit from Edward, through said adoptive parents, the same as if plaintiff was their natural son; that defendants claim some right, title

or interest in and to that part of the property owned by Edward at his death, that is, the distributive share of plaintiff, by reason of their claim that they are the surviving heirs of Edward, and that plaintiff is not such an heir; that by reason of the alleged facts, the defendants are estopped to claim that plaintiff is not the adopted brother of Edward, and are estopped to claim any part of the property of Edward, which under the law is the distributive share of plaintiff as such heir of Edward. Under count No. 2, plaintiff prays that his status as brother of Edward be established, and that he be decreed to take as such brother and heir his distributive share of said estate when set apart in the probate of said estate, and that such share be quieted in him as against the adverse claims of defendants. General equitable relief was prayed under both counts.

Defendants moved to dismiss the petition upon the grounds, (1st) that the matters alleged do not entitle plaintiff to the status of an adopted son for the reason that the pleading does not allege that said articles of adoption were acknowledged and recorded, as required by the adoption statute; (2d) that the matters alleged do not entitle plaintiff to inherit from Edward, because they do not constitute plaintiff an heir of James and Mary, nor of Edward; (3d) that the matters alleged afford no basis for applying an estoppel against defendants, for the reason that they show no act of defendants or failure to act on their part where there was a duty to act, nor any privity between defendants and any other parties against whom an estoppel could be predicated; (4th) that the facts alleged in count No. 2 do not entitle plaintiff to the relief demanded in this: it does not state facts showing him to be a brother, nor an heir-at-law of Edward, nor entitled to inherit from his estate, nor show any facts that he has the right to inherit directly from Edward, nor through his alleged adoptive parents by right of representation.

In sustaining the motion, the trial court said:

"I have no doubt that under the rule of the Iowa cases, the plaintiff, if there had been a statutory adoption, would be entitled to a share of any property as to which Edward Caulfield died intestate. And if the defendants are estopped from

denying plaintiff's status as an adopted son of James and Mary Caulfield, the result would doubtless be the same.

"It does not, I think, necessarily follow that because these defendants would be estopped from questioning the status of the plaintiff where the claim is to a share of the alleged adopting parent's estate that they would also be estopped where, as in this case, the claim is to a share of property left by a natural son of the alleged adopting parents. The cases must be read in the light of the facts to which the language used applied.

"Under sections 12025 and 12016 it would be the 'children' of James and Mary Caulfield who would take (directly) from Edward Caulfield, and this would not include one whose claim against the estate of James and Mary Caulfield is asserted under a contract which is short of a legally sufficient adoption contract unless there is something about the conduct of Edward which would estop him. No basis for an estoppel as against Edward Caulfield and those claiming under him is alleged."

Plaintiff's amended petition does not allege that the contract and articles of adoption were acknowledged and recorded as required by the statutes in force at that time (sections 2307 to 2310, Code of 1873). Section 2310, thereof, provided:

"Upon the execution, acknowledgment, and filing for record of such instrument [adoption contract], the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth."

Appellant bottoms his right, to a reversal of the judgment, and, to a one-third share in the estate of Edward Caulfield, upon two propositions: (1st) that he is the legally adopted son of James and Mary Caulfield, as truly as though every statutory provision for adoption had been fully complied with, and that as an *heir* of James and Mary Caulfield, he would be, under section 12025 of the Iowa Code, one of the three heirs of Edward Caulfield, deceased; (2d) that, if he is not a *legally adopted* son of James and Mary Caulfield, he has, by reason of the circumstances related in his pleading, the *status* of a legally adopted son, be-

cause of contract or estoppel, and thereby entitled to the property rights of a child of James and Mary Caulfield in their estate, and consequently under the provisions of said section 12025, as construed by this court, he is an heir of Edward Caulfield, deceased.

I. Is the appellant the legally adopted son of James and Mary Caulfield, as though all of the statutory steps essential to adoption were complied with, thus making James and Mary his adoptive parents, and him, their heir?

To answer this question in the affirmative, we must go further than we have heretofore gone in a case of this kind. Appellant relies largely upon the decision of the court in Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237. The facts in that case, with respect to the principal issues, were not substantially different from those in the numerous cases which have come before this court involving like situations. In it, and in each of those cases, there had been an intention to adopt the child, or to give it property rights ordinarily accompanying a parent and child relationship. In each, there had been a failure in some essential respect to comply with the adoption statutes. In each of them, the mutual relations and conduct of the parties had been substantially those incident to a parent and child status. In each of them, the child, having fully performed, was seeking, either in person or by those claiming under it, to preserve or protect the property rights acquired under the relationship. Perhaps the earliest, and one of the leading cases, is Chehak v. Battles, 133 Iowa 107, 110 N. W. 330, 8 L. R. A., N. S., 1130, 12 Ann. Cas. 140. In that case, the contract between the child's mother and the adopting parents provided that "said child is given to them [Mr. and Mrs. Battles] for the purpose of adoption as their own child and for no other purpose; * * * and upon the execution of these presents they * * * accept the rights, duties and relations of a parent to this child and shall in all respects be that of a child born to themselves in the state of wedlock, and that the same shall include all the rights of inheritance by law." The paper was executed by the mother but not by Mr. and Mrs. Battles, and it was not recorded. The heirs of Mrs. Battles sought to quiet title to the property and the child sought by specific performance to obtain what would have been her share

as an adopted child. This court held that the instrument was invalid as an instrument of adoption and that she was not an heir of Mrs. Battles, but that she was entitled to what would have been her statutory share, as her *property right* under the contract. The court, speaking through Justice Ladd, 133 Iowa 107, 114, 110 N. W. 330, 333, 8 L. R. A., N. S., 1130, 12 Ann. Cas. 140, said:

"The authorities upholding the right to specific performance never decree that the child is entitled to the right of inheritance *as an heir*. They do not undertake to change the status of either party, *but merely to enforce a contract which has been fully performed on one side.* * * * To take by inheritance one must be within the statutes relating to the succession to estates. * * * If he claims by adoption, he must show a valid execution of the instrument of adoption and compliance with the requirements of the statutes relating to adoption." (Italics ours.)

In Stiles v. Breed, 151 Iowa 86, 130 N. W. 376, there was an oral agreement to adopt the boy, care for him until he was of age, and, if he outlived the adopters, he was to have their property at their death. The adoption paper was never executed. The child's right to the property was established, not as an heir, but it was measured by the interest he would have received as an heir, and granted to him as a contract right.

In Lamb v. Morrow, 140 Iowa 89, 117 N. W. 1118, 18 L. R. A., N. S., 226, the Lambs attempted to adopt Charlotte Holmes. Articles of adoption were executed but were neither acknowledged nor recorded. The Lambs gave a conditional deed to a son of Charlotte, and later the surviving Lamb willed the property to him. The state sought to levy a collateral inheritance tax against the property under the claim that it went to an heir. The court in denying the claim of the state, held that the instrument of adoption was insufficient for a legal adoption, and that "the matters relied upon cannot make one an heir if in fact they do not in law establish that relation." In Anderson v. Blakesly, 155 Iowa 430, 136 N. W. 210, the instrument of adoption was duly acknowledged and recorded, but was held insufficient because the child was granted by the mayor of a "town," instead of by the mayor of a "city," or the clerk of the district

court. The instrument recited that the child was given ''to be the lawful and adopted child'' and ''shall be the lawful heir'' of the adopting parents. The child sought her rights in a partition action. In granting them to her, this court followed its decision in Chehak v. Battles, supra (133 Iowa 107), and, speaking through Justice Weaver, 155 Iowa 430, 435, 136 N. W. 210, 212, said of that case:

''* * * she became entitled to share in the property left by them in the proportion which would have been hers had the articles of adoption been validly executed and recorded. This right, it was decided, was not one of technical inheritance, *which can be created by statute only,* but a contract right which a court of equity would enforce.''

And, in speaking of the case before them (Anderson case), 155 Iowa 430, 436, 136 N. W. 210, 212, the court said:

''The agreement in this case was to establish the plaintiff in a relation in which she would have the rights of a child which would include the right of inheritance. This was not done effectually, and, while the court can not execute the intent and by its judgment establish plaintiff in the legal status of a child of the foster parents, it can give to her a remedy against the estate of the grantor in the deed of adoption thereby affording her a measure of compensation for that of which she was deprived without fault on her part.''

In Young v. McClannahan, 187 Iowa 1184, 1186, 1187, 1189, 175 N. W. 26, 27, 28, the ''deed of adoption'' was not recorded until after the adopted child had passed her majority, and for that reason it was held not to effect an adoption. It provided that it was executed '' 'for the purpose of adoption as their own child,' '' and that the adopting parents confer '' 'hereby upon such child all the right, privileges and responsibilities which would pertain to said child if born to us in lawful wedlock.' '' This court held that while ''she may not inherit, as an adopted child, anything from decedents. * * * Such a child would have inherited all their estate, real and personal, and therefore she is entitled thereto *by virtue of the contract.*'' (Italics ours.)

In other cases, the court has held that legal adoption, and

the consequent relation of heirship, can only be effected by compliance with the statutory requirements. See Morris v. Trotter, 202 Iowa 232, 210 N. W. 231; Webb v. McIntosh, 178 Iowa 156, 159 N. W. 637; In re Estate of Williamson, 205 Iowa 772, 218 N. W. 469; Kisor v. Litzenberg, 203 Iowa 1183, 212 N. W. 343; In re Estate of Fitzgerald, 223 Iowa 141, 272 N. W. 117.

In Shaw v. Scott, supra (217 Iowa 1259, 1267, 252 N. W. 237, 241), two sets of adoption papers were executed, but neither one was recorded. There was no proof of the contents of either, but inasmuch as the last one was prepared under the direction of the court, it may be reasonably presumed that it was in proper form. The record was therefore silent as to whether the instruments referred to property rights. The suit brought was one in equity by the administrators of the estate of Dollie Bell to establish the right of her estate to all of the intestate property of her deceased adoptive parents, in behalf of her children, and as against the collateral heirs of these parents. This court stated that: "It is conceded by the parties * * * that the question of estoppel here presented has not hitherto been considered by this court."

As stated in 19 American Jurisprudence, page 600: "There are few, if any, topics of the law or relationships of which the law takes cognizance which are not affected to a greater or lesser degree by the principles of estoppel." Because of this fact, it is difficult to define it. Lord Coke said: "* * * it is called an estoppel or conclusion, because a man's owne act or acceptance stoppeth or closeth up his mouth to alleage or plead the truth." (2 Coke's Littleton, 352 a.) This court has discussed the subject at some length in Anfenson v. Banks, 180 Iowa 1066, 163 N. W. 608, L. R. A. 1918D, 482. On page 1091 thereof [page 616 of 163 N. W.] the court said that "an equitable estoppel, or estoppel in pais, [is] a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. * * * A party may thus estop himself by his spoken or written statements or representations," and has "thereby acquired an unfair advantage."

The principle which the court has sought to apply in all of

these cases from Chehak v. Battles, supra, and others including Shaw v. Scott, supra, down to and including our latest decisions thereon, is to do justice and equity, as far as possible to one who, though having filled the place of a natural born child, through inadvertence or fault has not been legally adopted. In such case, property recompense has been measured in the amount fixed by the statutes of descent and distribution. But we have never held in any case, including Shaw v. Scott, supra, that in so doing our decision so cured the defects in the adoption as to effect a legal adoption as though the statutory proceedings had been fully complied with. Since the matter of adoption is strictly statutory and cannot be effected by the mere agreement of the interested parties, with better reason may it be said that it cannot be effected by estoppel in pais, or by conduct. There is nothing in the later cases of Bergman v. Carson, 226 Iowa 449, 284 N. W. 442, Vermillion v. Sikora, 227 Iowa 786, 289 N. W. 27, or Sheaffer v. Sheaffer, 228 Iowa 779, 292 N. W. 789, to the contrary. In fact, the statement of Justice Stiger in Vermillion v. Sikora, supra [227 Iowa 786, 791, 289 N. W. 27, 29], that ''The doctrine of adoption by estoppel has often been considered by this court * * *'' followed by the citation of Chehak v. Battles, Stiles v. Breed, Shaw v. Scott, and Bergman v. Carson, all referred to herein, indicates that we have always taken the same attitude toward the matter, and that is that neither by contract nor estoppel can the child become legally adopted. The adoption contract in this case provided for the right of inheritance, a property right, in the appellant, the same as in the contracts involved in Chehak v. Battles, Anderson v. Blakesley, and Young v. McClannahan, and our decision must be the same as in those cases that a lawful or legal adoption was not effected, and that appellant was not an heir of James or Mary.

While the defendants Rose and Matilda might be barred by the contract or estoppel of their parents from disputing the right of appellant in the estates of the latter, a question which is not before us and which we do not decide, there is nothing in this record to sustain a holding that they are barred by contract or estoppel from disputing the appellant's claim to a share in the estate of Edward.

Appellees insist that even though the appellant were le-

gally adopted, he could not inherit from Edward. Because of our holding that he was not so adopted, that question is not before us. It will be time to answer it when it is necessary for decision.

While it is not necessary to cite authorities, in addition to our own decisions, in support of our conclusion in this division, we call attention to the general principle, thus stated in 1 R. C. L. 617:

"The courts merely enforce the contract which has been fully performed on one side; they do not undertake to change the status of either party, or to decree that the child is entitled to the right of inheritance as an heir."

In 1 C. J. 1378 is this statement:

"The mere contract to adopt is not sufficient of itself to make the child a legal heir of the promisor, because the right to take as heir exists only by operation of law. The child takes in these cases by virtue of the contract and by way of damages or specific performance." See also Malaney v. Cameron, 98 Kan. 620, 159 P. 19, 99 Kan. 70, 161 P. 1180 (on rehearing), and Hickox v. Johnston, 113 Kan. 99, 213 P. 1060, 27 A. L. R. 1322, and also discussion 2 C. J. S., pages 399, 400, 401, and citations in support of the text.

II. From the fact that plaintiff has made the executor of Edward's estate a party defendant, we may assume that Edward died testate, although the pleadings nowhere so state, nor are we informed as to the terms of the will. Appellant, in argument, states that he died intestate. The appellees say that this statement is an inadvertence. But both parties treated the property in controversy as though it were intestate property passing under the provisions of Code section 12025. We will, therefore, so consider it.

Appellant contends that the lower court improperly sustained the motion to dismiss for the reason that the admitted facts show that he is a person who would take a one-third share of Edward's property if you apply section 12025 and treat James and Mary Caulfield as living and dying in possession of this property.

When the statutes of descent and distribution were first enacted in this state, the legislature discarded the "next of kin" mode of devolution followed in all of the other states, and adopted a new plan, the theory of which was embodied in section 1411 et seq., Code of 1851, section 2497 of the Revision of 1860, section 2457 of the Code of 1873, section 3381 of the Code of 1897, and section 12025 of the subsequent Codes. There has been no material change in this section except to clarify it (section 2497 of the Revision) after it was construed in Bassil v. Loffer, 38 Iowa 451. The provisions of section 12025 of the Codes of 1924 and subsequent years are:

"If both parents are dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on, through ascending ancestors and their issue."

Of this section, the court in In re Estate of Bradley, 210 Iowa 1013, 1018, 231 N. W. 661, 663, said, that it "figuratively speaking, resurrects momentarily both parents, and casts descent, * * * upon them." This presumed resurrection has been spoken of by the court as a fiction assumed for the purpose of identifying the heirs of the intestate and casting the descent upon them.

Of section 12025, and the theory of his case, the appellant thus speaks:

"When Edward Caulfield died without wife or children and both of his parents are dead, we then use statutory rules to determine who will take his property under the statutes of Iowa. The statutes bear no relation to blood relationship, consanguinity or degree of relationship. They are not based upon either common or civil law, but are rules, all sufficient, to solve any problem of descent. In other words, a brother does not inherit from a brother because he is a brother, a blood relative of any given degree, but because a certain statutory rule of descent, section 12025, carries the property to him. The portion that would have fallen to the parents had they outlived him (one-half the

estate to each) is carried through to those persons, regardless of blood relationship, who would take if the parents had died in possession of the property.''

In support of his stated position, he cites the case of McAllister v. McAllister, 183 Iowa 245, 167 N. W. 78, and states that there are many others. We have no quarrel with the contention of the appellant respecting the construction of section 12025, as above stated, nor with the holding in the McAllister case. It was rightly decided by a clear-thinking trial court, and affirmed in an opinion written by an able judge of this court. In that case, Charles McAllister died testate leaving the remainder of his property, in equal shares, to his wife, Fannie, and to his son, Alexander, by a former wife, Laura, who had died leaving no other heirs. Alexander predeceased his father, the testator, without issue, but leaving a widow, Sue, who survived the testator. Fannie also survived the testator. Since the devisee, Alexander, died before the testator, the devise to him, under the anti-lapse statute, section 3281 of the 1897 Code, passed to his heirs. Under section 3379, one half went to his wife, Sue, and the other half passed under the provisions of section 3381 (section 12025 of the Code of 1935, above set out). His mother, Laura, having died without heirs, the entire half was disposed of as though his father, Charles, had been resurrected to life and died in the ownership and possession of it. Since he then would have left his wife, Fannie, surviving, she would have taken one third of it. In other words, though no heir of her husband, she was an heir of her stepson, though no blood relation to him. In so deciding, the court followed Moore v. Weaver, 53 Iowa 11, 3 N. W. 741; In re Estate of Parker, 97 Iowa 593, 66 N. W. 908; and Lawley v. Keyes, 172 Iowa 575, 578, 154 N. W. 940, 941. The rule upon which appellant bases his right to recover is stated in the Lawley case as follows:

''The argument of appellants proceeds on the theory that this statute [section 3381, 1897 Code] casts the descent on the *legal heirs* of the deceased parents. * * * But those who are to take are not so nominated. The design of the statute is to lay down a rule by which the heirs of the intestate shall be ascertained. How? By learning who would have taken the estate if the parents of the

intestate had outlived him and died in the possession and ownership of the property; and the persons who would thus have taken are, by this statute, declared the heirs of an estate of a person who has died without spouse or issue, and such persons take directly and not through the parent."

In that case, a stepmother was an heir of her stepson. This was also true in Moore v. Weaver, supra, and in In re Estate of Parker, supra.

From these authorities, appellant argues that since one who takes under section 12025 need not be an heir of the parent, then it is immaterial that the appellant is not a legally adopted son of James and Mary, since, because of his contract rights or by estoppel, he is entitled to recover from their estate what he would have been entitled to had he been legally adopted, and that therefore he is an heir of Edward. This conclusion does not follow. This is a question which has never before been presented to this court.

It will be noted that in the McAllister case, and in the other cases just mentioned, the persons who took as heirs, took under the statutes of descent and distribution, and because they bore a relationship to the resurrected parent contemplated by those statutes. Appellant has cited us no case, and we have found none in our search, where the person who took, did not take under the statutes and under a relationship contemplated therein. In short, we have found no person who took as an heir of the intestate because of a contract with the resurrected parent or because of any right arising out of an estoppel against the latter. In our judgment, the legislature never intended that a person who participates, by reason of a right of contract or estoppel, in the estate of a parent assumed to have survived an intestate, under section 12025, thereby becomes an heir of that intestate. If that were true, then if James and Mary had agreed with someone that the latter should have a part, or all of their estate on their deaths, if he would name a baby after one of them, as in Daily v. Minnick, 117 Iowa 563, 91 N. W. 913, 60 L. R. A. 840, or for some other consideration, that person would have been an heir of Edward, even though Edward had never known of the person or of the agreement.

Under the pleaded facts, the contract of adoption provided for "full rights of inheritance as though they were his lawful

and natural parents,'' yet it is reasonable to suppose that the inheritance contemplated was the one which would come into being upon their natural death, and not upon their death after the assumed resurrection. When the former took place, Edward was alive and his property could not have been a part of the estate left by James and Mary out of which the appellant was entitled to a portion by contract or by estoppel. It is our conclusion and judgment that the appellant is not an heir of Edward Caulfield, and that the judgment appealed from should be, and it is affirmed.—Affirmed.

RICHARDS, C. J., and MITCHELL, HAMILTON, SAGER, OLIVER, HALE, and MILLER, JJ., concur.