MARY McM. MILLER, Appellant, *v.* WILLIAM V. ELLIOTT, Public Administrator of Kings County, as Administrator of the Estate of MARY E. McMAHON, Deceased, et al., Respondents.

Second Department, June 28, 1943.

*Harold V. Dixon* for appellant.

*Thomas J. Snee* for respondent William V. Elliott, Public Administrator of Kings County, as administrator, etc., of Mary E. McMahon and of Thomas McMahon, deceased.

*Corning G. McKennee* of counsel (*Nathaniel L. Goldstein, Attorney-General,* and *Orrin G. Judd* with him on the brief), for respondent Morris S. Tremaine, Comptroller of the State of New York.

HAGARTY, J. The plaintiff, Mary McMahon Miller, was born Georgina Allen, in the year 1900. At the age of eight, then being an orphan, she was taken into the protective custody of the Catholic Home Bureau for Dependent Children, hereinafter referred to as the Home Bureau. In this action she asserts property rights under an alleged agreement made on her behalf by one Thomas McMahon and his wife, Mary E. McMahon, both now deceased, with the Home Bureau, to adopt her as their child. Mary E. McMahon died in 1923, and a year later Thomas McMahon died. The estates of the McMahons are represented in this action by defendants the Public Administrator of Kings County and the Comptroller of the State of New York.

On April 24, 1911, the McMahons applied to the Home Bureau for a female child. The Home Bureau furnished the applicants with a printed form soliciting information concerning the applicants and the future care and upbringing of any child that the Home Bureau might see fit to entrust to them. One of these questions read: " Do you intend to legally adopt the child if it proves satisfactory and the Bureau consents? " The question was answered in the affirmative. Thereafter, and on May 1, 1911, the Home Bureau, being satisfied with the information elicited, issued a letter directed to St. Joseph's Asylum, in Brooklyn, where the child was then lodged, authorizing the orphanage to deliver Georgina into the custody of the McMahons. From May 2, 1911, until the marriage of the

plaintiff on June 18, 1919, she continuously resided with the McMahons. She became known as Mary Agnes McMahon, did the housework in the McMahon home and, in addition, assisted in the work of caring for the building in which the McMahons resided and of which they were the janitors. She went to school and, when old enough, procured employment and turned over her wages to her foster parents. In all respects she acted as a daughter to the McMahons who, in turn, treated her as their daughter.

Plaintiff's case consisted of the testimony of disinterested witnesses and documentary proof. A neighbor of the McMahons testified that on an occasion in August of 1911, Mrs. McMahon told her that it was her intention to adopt the child Mary. Another neighbor testified that in 1913 Mrs. McMahon told her that she had adopted Mary. Under date of November 9, 1912, Mrs. McMahon wrote to the Home Bureau to the effect that they, the McMahons, wished to proceed with the child's adoption and requested permission so to do. Thereafter, and on July 17, 1913, the Home Bureau adopted a resolution granting the petition of the McMahons to proceed with the legal adoption and authorizing its secretary to sign all necessary consents and to affix thereto the Home Bureau's seal. The resolution is in evidence. No proof was offered by the defendants.

The McMahon estates were administered by the public administrator of Kings County. In the estate of Thomas McMahon, an heirship proceeding was had, wherein it was found that no proof had been submitted of the existence of distributees of the deceased. Plaintiff was not a party to that proceeding. By a decree of the Surrogate's Court of the County of Kings, the sum of approximately $1,500 was deposited with the Comptroller of the State of New York for the benefit of the next of kin and heirs at law who may be entitled thereto. The estate of Mary E. McMahon is now in process of administration and it appears that there will be a sum of approximately $900 for distribution to those thereto entitled. No heir, next of kin or distributee has appeared to claim either estate.

The learned trial court granted judgment for the defendants, apparently on the theory that it had no power to decree specific performance of an agreement to adopt. But the plaintiff does not contend that she is entitled to enforce the agreement to adopt. Her claim is that such an agreement was made and breached by the decedents, as a result of which property rights accrued to her. The sole question here is whether the plaintiff, as a matter of law, upon the undisputed proof, is entitled to the

relief she seeks. The documentary evidence is conclusive as to the nature and extent of the transaction between the McMahons and the Home Bureau. There is no question involving its authenticity. As to the testimony of the neighbors, the trial court accepted it as true. Plaintiff's proof precludes any thought of fraud or falsification. There is no claim of injustice to any one, nor is there any question of public policy involved.

My conclusion is that the plaintiff established the contract made by the McMahons with the Home Bureau on her behalf legally to adopt her as their child and that the contract, intentionally or otherwise, was breached. The trial court intimated that it was unintentional, for he stated: "It may be that the McMahons thought this consent, these actions on the part of the organization was all that was required, I do not know, and that adoption had been accomplished." If that be so, then it was the intention of the McMahons legally to adopt the child under the agreement with the Home Bureau. Concededly, there never was a legal adoption, but that is immaterial. (*Gavin* v. *Aitken,* 258 N. Y. 595; *Middleworth* v. *Ordway,* 191 N. Y. 404; *Godine* v. *Kidd,* 64 Hun 585; *Winne* v. *Winne,* 166 N. Y. 263; *Roberts* v. *Roberts,* 223 F. 775; cert. den. 239 U. S. 639; *Ansley* v. *Ansley,* 154 Ga. 357.)

The judgment should be reversed on the law and the facts, with costs, payable out of the estates, and judgment should be directed for the plaintiff as prayed for in the complaint, with costs, payable out of the estates.

CLOSE, P. J., CARSWELL, JOHNSTON and LEWIS, JJ., concur.

Judgment reversed on the law and the facts, with costs, payable out of the estates, and judgment directed for the plaintiff for the relief prayed for in the complaint, with costs, payable out of the estates.