IN RE ESTATE OF BURLEIGH M. PAINTER.

ANNA PAINTER BROWN, cross-petitioner, appellee, v. HANNAH I. PAINTER, individually and as administratrix of estate of BURLEIGH M. PAINTER, et al., appellants.

No. 48592.

(Reported in 67 N.W.2d 617)

DECEMBER 14, 1954.

Jones, Cambridge & Carl, of Atlantic, for appellants.

Dalton & Dalton, of Atlantic, for cross-petitioner, appellee.

Rudolph & Rudolph, of Atlantic, for widow-administratrix.

HAYS, J.—Hannah I. Painter, administratrix and surviving spouse of Burleigh M. Painter, deceased, filed an application in the probate court for a determination of heirship in said estate. She states that Anna Painter Brown claims an interest equivalent to that of a natural child; that the collateral heirs claim to be entitled to the estate exclusive of the claims and share of applicant therein. The collateral heirs are: Ira Painter, brother; Jennie Grulke, sister; Mary E. Snyder, Maxine Egy, J. L. Painter, and L. C. Painter, nieces and nephews; Lucian Leonard, Jr., Harry Frederick Leonard, Ruby Parker, Lorraine Brittain, Linda Leonard, and Francis Leonard, grandnephews and grandnieces.

Anna Painter Brown denies the claim of the collateral heirs and by cross-petition asserts a contract to adopt her was made by decedent; that she has fully performed thereunder and, while no adoption was consummated, she is entitled to the status of an adopted child. She asks that an adoption by estoppel be recognized and the collateral heirs be estopped from disputing her rights as an adopted child. The collateral heirs deny these allegations and assert their interests under the statutes governing descent and distribution.

The case was transferred and tried in equity. At a pretrial conference it was stipulated that Hannah I. Painter is the surviving spouse of Burleigh M. Painter, deceased; that decedent left no issue and she is his second wife; that the parties defendant are the collateral heirs of decedent, who died intestate; that Anna Painter Brown is the daughter of one Henry Wil-

liams, who died in 1916; that she was born Mabel Ann Williams and was one of four minor children, the others being Alfred Henry Williams, May Esther Williams and Levi Williams; that in 1916 one Charles W. McCaustland, now deceased, was a member of the Board of Supervisors of Cass County, Iowa; that Christine Painter, decedent's first wife, died in 1939.

The trial court held that the collateral heirs are forever estopped from disputing the right of the said Anna Painter Brown to inherit from the decedent as an adopted daughter; that she be and is hereby awarded the status of a daughter, by adoption, of Burleigh M. Painter, deceased; that she is awarded a share in the estate equivalent to that of a natural child. The collateral heirs have appealed.

Adoption is strictly statutory. The statutes effective at the time in question are sections 3251, 3252 and 3253, Code of 1897. They provide that where the parents of a minor child are dead, consent to its adoption shall be given by the mayor of a city or by the clerk of the district court; that such consent must be signed, acknowledged and filed in the county recorder's office; when so filed for record, the child has the rights of a natural child of the adoptive parents. It is conceded that the above cited statutes were never complied with.

No question of right to inherit is involved in this case. It is well settled that only by strict compliance with the statutes governing adoption can rights of inheritance be acquired. Shearer v. Weaver, 56 Iowa 578, 9 N.W. 907; In re Estate of Williamson, 205 Iowa 772, 218 N.W. 469. It is also the rule that even though there be an agreement to adopt, which was not executed in compliance with the statute, and which also conferred property rights, whatever rights are attained arise from the contract and not by virtue of the inheritance statutes. The statutes merely define the extent of the interest taken. Fowler v. Lowe, 241 Iowa 1093, 42 N.W.2d 516.

However, we do recognize that under the theory of "adoption by estoppel" (estoppel in pais) certain property rights may be attained. In Shaw v. Scott, 217 Iowa 1259, 1272, 252 N.W. 237, 243, we said: "While this court has never held an agreement of adoption to be enforceable as such where there was a failure to comply substantially with the essential provisions of

the adoption statutes, our later decisions unmistakably disclose a tendency to construe the requirements of these statutes liberally, in order to carry out the intentions of the parties and to protect the interests of a child who has been the subject of an attempted adoption and who has in every way complied with the adoption agreement and fulfilled the duties of an adopted child, as against collateral heirs whose only claim to the property of the adopting parents is that of blood relationship." See also In re Adoption of Alley, 234 Iowa 931, 14 N.W.2d 742.

As stated in annotation, 142 A. L. R. 84, at page 122: "* * * estoppel in pais precludes adoptive parents and their privies from asserting the invalidity of adoption proceedings or, at least, the status of the adopted child, where by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child." The courts merely enforce the contract which has been fully performed on one side; they do not undertake to change the status of either party or to decree that the child is entitled to the rights of inheritance as an heir. Caulfield v. Noonan, 229 Iowa 955, 295 N.W. 466; Wooster v. State Tax Commission, 230 Iowa 797, 298 N.W. 922, 141 A. L. R. 1298.

Thus, if appellee is to share in this estate it must be by virtue of an unexecuted agreement to adopt by the Painters, and performance upon her part. In both, she carries the burden.

All parties to the alleged oral agreement are dead, i.e., Burleigh Painter and Charles McCaustland. Upon the issue of the existence of an agreement to adopt, the record is quite extensive. In the Atlantic News Telegraph, a newspaper published in Atlantic, Cass County, Iowa, dated April 10, 1916, is an account of the death of Henry Williams of the Marne neighborhood in Cass County. It contained the following statement: "It is understood that the four children will be taken to the orphans' home should no other arrangements be made for them. Supervisor McCaustland has made all arrangements for them to be accepted at that institution." In the issue of April 19, 1916, appeared a statement that one of the Williams children (May Esther) had been adopted and said: "The other children may

be taken to the Iowa Children's Home if no one comes forward to adopt them." At this time Mabel Ann and Levi were in an Atlantic hospital. While there Burleigh Painter and his wife came to see them.

A Doc Pigsley, who worked for and took his meals with the Painters in 1916 and 1917, testified that in late April 1916 he saw Charlie McCaustland and two children come to the Painter home and shortly thereafter McCaustland left without them; at the dining table that same day, the children were present; that he asked Mrs. Painter whose children they were and she said: " 'We are adopting them. We have got to adopt them to keep them.' " A few days later he asked Mr. Painter how he liked the children. He was told that " 'we have got to adopt them to get to keep them.' " He said he had agreed with McCaustland to adopt them and they had to use them as their own children and educate them. The children (Mabel Ann and Levi Williams) were called Anna and Wilbur Painter.

A. K. Zimmerman, married to a sister of Christine Painter, stated that the Painters had no children and were looking for some to adopt. In 1916 he saw the two children in the Painter home. Mrs. Painter told him that when they got them it was agreed that they were to adopt them, as that was the only way they could get them. A short time later Christine told him " 'everything is all right now, the children are ours.' " At the time of Anna's marriage in 1928, Burleigh said to him: " 'Well we had her for a long time and it took him only a few minutes to give her away.' "

Mrs. Smith Wardrip worked at the Painter home in 1937. She stated that Mrs. Painter told her Anna was her adopted child and when she was gone she wanted her (Anna) to have what she had.

The record shows that Mabel Ann Williams was six years of age and Levi Williams was two years of age when they came to the Painter home. They immediately took the names of Anna Painter and Wilbur Painter. Wilbur died in 1934 and was buried in the same cemetery lot where Christine and Burleigh Painter are now buried. A monument, similar to those erected for the Painters, bears the inscription: "Wilbur Painter. Sep-

tember 11, 1915—August 8, 1934." At the time of Anna's marriage, the Painters sent out announcements stating: "Mr. and Mrs. B. M. Painter announce the wedding of their daughter to Clare J. Brown."

Christine Painter died in 1939. Just prior to her death she told Anna she had never been adopted, which was the first Anna knew that she was not an adopted child. Christine's will gave to " 'Anna Painter Brown, whom my husband and I raised, $1,000 and the balance of her property, subject to a life estate in Burleigh Painter.' "

The record, with testimony, shows without a single contradiction that from the time she came into the home until Christine and Burleigh Painter died she was acclaimed by them as their daughter, and was so known and considered in the schools, church, and community. After Anna's children were born, they were acknowledged and treated by Christine and Burleigh Painter as their grandchildren. The record abundantly supports the trial court's finding that an agreement to adopt was made and through neglect was never legally consummated.

As to the performance by Anna of her obligations, it appears that she lived in the home until her marriage in 1928. During this time her demeanor, activities and relationship with the Painters was that of the average parent and child. After her marriage she and her family continued in the same manner. At times when the Painters were ill she would come and assist in caring for them. Her part of the agreement was fully and faithfully performed.

Under this record, every conceivable principle of justice and equity sustains the claim of Anna Painter Brown as against the claim of the collateral heirs; and under the rules of law, set forth herein, the trial court properly held that she should take all the property of the estate that would have been hers had she been a natural or a legally adopted child of the decedent.

However, the decree of the trial court, which estops the collateral heirs from disputing her rights to inherit as an adopted daughter and awards her the status of a daughter by adoption should be corrected to merely estopping the collateral heirs from disputing her right to take, by virtue of the agreement to adopt, the share she would have taken had there been a legal adoption.

Subject to the above correction the decree of the trial court is affirmed.—Remanded for correction and affirmed.

GARFIELD, C.J., and BLISS, OLIVER, WENNERSTRUM, MULRONEY, THOMPSON, and LARSON, JJ., concur.