48 Cal.2d 116 (1957)
Estate of JACK R. RADOVICH, Deceased. ROBERT C. KIRKWOOD, as State Controller, Appellant,
v.
CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES et al., Respondents.
L. A. No. 24034. 
Supreme Court of California. In Bank. 
Mar. 15, 1957.
 James W. Hickey, Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, William R. Elam and Milton A. Huot, Assistant Inheritance Tax Attorneys, for Appellant.
 Louis Thomas Hiller, Nat Wilk, Scudder & Forde and George A. Forde for Respondents.
 CARTER, J.
 This is an appeal by the Controller of the State of California from a judgment of the superior court, sitting in probate, which sustained respondent George Radovich's objections to the report of the inheritance tax appraiser and which fixed the inheritance tax on the estate of Jack R. Radovich, deceased.
 The facts are not in dispute.
 In 1934, when George Vukoye (now legally known as George Radovich) was 17 years of age, his natural parents entered into an oral agreement with the decedent, Jack R. Radovich, whereby George was to live with Jack who promised that he would consider George his son and would adopt him. George lived with Jack until Jack's death in October, 1953, changed his name to George Radovich and was publicly acknowledged by Jack as his son and the heir to his estate. During the time George lived with Jack, he worked in Jack's liquor store, conducted himself as a natural child and considered himself the son of Jack. Jack died intestate without having married or leaving issue of his body. He left no father or mother surviving him but did leave some blood relatives in Yugoslavia. [fn. *] Jack had not, during his lifetime, instituted formal proceedings for the adoption of George.
 On the death of Jack, the Citizens National Trust and Savings Bank of Los Angeles and Novak D. Novcic, a nephew of the decedent, were appointed as coadministrators of Jack's estate. On June 14, 1954, George filed a petition in the probate proceeding to determine his heirship in the estate of Jack. After a hearing, Judge John Gee Clark made findings *119 (which included the facts heretofore set forth) and concluded that "George Radovich occupies in equity the equitable status of an adopted son and by reason thereof is entitled to distribution of all of the Estate of the decedent." A decree was then entered on the findings of fact to the effect that George had the equitable status of an adopted son of the decedent and was entitled to all of the estate (with the exception of the sum transferred to the relatives in Yugoslavia). Although the heirship proceeding was contested no appeal was taken and that decree is now final.
 Subsequent to the decree of the probate court, an inheritance tax appraiser was appointed who filed his report claiming that George Radovich was a stranger in blood to the decedent and that he should be allowed a specific exemption of $50 as a Class D transferee and computing the inheritance tax due at the rate of a stranger under sections 13310 and 13407 of the Revenue and Taxation Code. The bank, Novak Novcic, and George filed objections to the report of the inheritance tax appraiser under section 14510 of the Revenue and Taxation Code. A hearing was had before Judge Hansen who filed findings of fact, conclusions of law and a memorandum opinion and signed a judgment determining that George was a Class A transferee (adopted child). This appeal followed that judgment.
 The only question involved here and one which is of first impression in this state is whether under the facts presented George is a Class A transferee. Section 13307 of the Revenue and Taxation Code provides that a Class A transferee is "(b) A transferee whose relationship to the decedent is that of a child adopted by the decedent in conformity with the laws of this State, provided such child was under the age of 21 years at the time of such adoption."
 It is contended by appellant that since George was not adopted in conformity with the statutory requirements of this state that he takes as a stranger and only because of the contract made by his natural parents with the decedent. Respondents contend that the heirship proceeding in which it was declared that George was, in equity, the adopted son of the decedent is a final judgment in rem which is binding on the appellant and all others. It is also argued by respondents that the words of the statute "adopted by the decedent in conformity with the laws of this state" (emphasis added) should be construed to mean not only in conformity with the *120 statutory law of this state but the law as set forth by a decision of a court of competent jurisdiction. Respondents also argue that George took the money by inheritance; that a stranger may not inherit; that it was only by reason of his inheritance that George is subject to an inheritance tax.
 [1a, 2] This court has held (Estate of Wise, 34 Cal.2d 376 [210 P.2d 497]) that the jurisdiction of the probate court is a jurisdiction in rem; that an heirship proceeding is not an ordinary civil action, but a specialized proceeding in rem. The res is the right of heirship and distribution and as to that issue the decree is binding on the whole world. [3] We said there that "so it has been said that such heirship 'decree [is] conclusive against all persons' as the 'basis for the decree of distribution which [is] to follow' (Estate of Blythe, 110 Cal. 231, 234 [42 P. 643]); it settles 'the rights of all persons claiming as heirs of the decedent, whether or not they are named in the complaint or personally served with summons' (Title & Document Restoration Co. v. Kerrigan, 150 Cal. 289, 307 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A.N.S. 682]). ... [4] The decree is not one 'in personam in favor of one of the parties against another.' (Edlund v. Superior Court, 209 Cal. 690, 695 [289 P. 841].) Rather, as founded in a specialized proceeding in rem--'not against persons as such, but against or upon the thing or subject matter itself'--the decree, when rendered, 'is a solemn declaration of the status of the thing, and ipso facto renders it what the [decree] declares it to be.' (11A Cal.Jur. 73, p. 135, and cases there cited.) While it may 'not be questioned that justice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be to the accomplishment of that purpose,' that does not mean that a 'valid decree' determinative of rights 'of distribution ... when once final, may be disturbed at the behest of any rightful claimant, known or unknown, when the decree was rendered, for it is the well-settled policy of the law to preserve the inviolability of final judgments and decrees of courts of law and equity, and a valid decree of a court of probate partakes of the nature of such judgments.' (Edlund v. Superior Court, supra, 209 Cal. 690, 695.)" (See also 29 Cal.Jur.2d 294, p. 273.)
 Section 1908, subdivision 1, of the Code of Civil Procedure provides that the effect of a judgment or final order is as follows: "In case of a judgment or order against a specific *121 thing, or in respect to the probate of a will, or the administration of the estate of a decedent, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will, or administration, or the condition or relation of the person." [1b] In Abels v. Frey, 126 Cal.App. 48, 53 [14 P.2d 594], it was held: "The jurisdiction of the probate court is a jurisdiction in rem, the res being the estate of the decedent which is to be administered and distributed with regard to the rights of creditors, devisees, legatees and all the world. (Warren v. Ellis, 39 Cal.App. 542 [179 P. 544]; Nicholson v. Leatham, 28 Cal.App. 597 [153 P. 965, 155 P. 98].) [5] By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him, ' "subject only to be[ing] reversed, set aside, or modified on appeal." ' [6] The decree is as binding upon him if he fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court. (William Hill Co. v. Lawler, 116 Cal. 359 [48 P. 323]; Mulcahey v. Dow, 131 Cal. 73 [63 P. 158]; Hanley v. Hanley, supra [114 Cal. 690 (46 P. 736)].)" (See also Bath v. Valdez, 70 Cal. 350, 361 [11 P. 724]; Barnard v. Wilson, 74 Cal. 512, 516 [16 P. 307]; Howell v. Budd, 91 Cal. 342, 349, 350 [27 P. 747].)
 In the heirship proceedings, it was adjudged that George was entitled to inherit all of Jack's estate, and for the purposes of probating the estate he was adjudged to be in equity "an adopted son." That determination has long since become final.
 [7] In Estate of Bloom, 213 Cal. 575, 580 [2 P.2d 753], it was held that the tax imposed by the Inheritance Tax Law is on the right to succeed to the property of the estate, rather than upon the property itself. (Estate of Letchworth, 201 Cal. 1 [255 P. 195].) [8] The heirship decree adjudging that George was, in equity, the adopted son of Jack, and therefore entitled to succeed to his property, as an heir, was the basis for the imposition of the inheritance tax. Inasmuch as George takes Jack's estate only by reason of the adjudication *122 of his status as Jack's adopted son and heir, it appears that appellant may not claim that he inherits as a stranger. [9] The conclusion of the trial court sitting in probate as to George's right to inherit as the adopted son of Jack may have been erroneous but it was an action in rem which is now final. In Estate of Daughaday, 168 Cal. 63 [141 P. 929], it was held that even if a decree establishing title under the McEnerney Act was mistaken in fact, it nevertheless stood as a conclusive adjudication in rem binding upon the whole world. In Woods v. Security-First Nat. Bank, 46 Cal.2d 697, 703, 704 [299 P.2d 657], where the plaintiff had instituted heirship proceedings and where the court's decision had become final "long before the commencement of the present action," we held that "Whatever reasoning prompted the court in arriving at its conclusion that the plaintiff was entitled to one-half is not now important. The court had the right to decide the question at issue, as the plaintiff in asserting that he was an heir was thereby claiming through the estate and not adversely to it. (Central Bank v. Superior Court, 45 Cal.2d 10, 16-17 [285 P.2d 906].) It mattered not whether the court sitting in probate found the property to be community or separate. It had the power to decide the question of heirship presented in the petition and the determination therein is res judicata."
 [10] Appellant contends that the probate decree as to George's right to inherit as an adopted son is not binding upon the state inasmuch as the state could not have been a party to the heirship proceeding. Appellant's argument that the state was not a proper party to the heirship proceeding is quite correct (Prob. Code, 1080 et seq.) but it appears, also, that the appellant's argument is inconsistent with its attempt to tax the inheritance here involved by classifying George as a stranger (Rev. & Tax. Code, 13310). Section 13306 defines "transferee" as any person to whom a transfer is made, and includes any legatee, devisee, heir, next of kin, grantee, donee, vendee, assignee, successor, survivor, or beneficiary. Section 13307 defines Class A transferees as a husband, wife, lineal ancestor, or lineal issue of the decedent, or an adopted child, or a transferee to whom the decedent stood in the mutually acknowledged relationship of a parent for not less than 10 years prior to the transfer if the relationship commenced on or before the transferee's fifteenth birthday, or the lineal issue of a child of the adopted child, *123 or the mutually acknowledged child of the decedent. Section 13308 defines Class B transferees as the brother, sister, or descendant of a brother or sister of the decedent, or the descendant of a brother or sister of the father or mother of the decedent. Class D transferees are defined by section 13310 as any transferee who is not in any of the classes above mentioned. [11] Since only an heir may inherit and since George was not a grantee, donee, vendee, assignee, or beneficiary of Jack, it follows that in view of the probate decree he took Jack's estate as his adopted child and heir ( 13307, subd. (b)) and appellant's argument must fail.
 Although no case directly in point has been cited to us, nor has independent research revealed any, it has been held in a proceeding under the act of 1889 which supplemented the Wright Irrigation Act, that the confirmation of the validity of an organization of an irrigation district and the bonds issued thereby was a proceeding in rem and that the judgment therein bound the whole world, including the state (People v. Linda Vista Irr. Dist., 128 Cal. 477 [61 P. 86]). (See also People v. Perris Irr. Dist., 132 Cal. 289 [64 P. 399, 773]; and 29 Cal.Jur.2d 296, p. 276.) It has also been held (Brooks v. United States, 84 F.Supp. 622) that the decree of a California court of general jurisdiction which found that half of the community property was the property of the decedent and that the other half should be distributed to his surviving widow as her half, was binding on the Commissioner of Internal Revenue in determining plaintiff's community interests. [12] It clearly appears that since the inheritance tax to be levied depended in the first instance on the probate court's findings as to heirship and George's right to succeed to the property (Estate of Letchworth, 201 Cal. 1 [255 P. 195]), such finding must be binding on the state as well as on all others. We said in In re Miller, 31 Cal.2d 191, 199 [187 P.2d 722], in speaking of the Inheritance Tax Act of 1935, that "As with a succession statute, death is the 'generating source' for the operation of the inheritance tax, consistent with the commonly accepted theory that such tax is imposed on the right to receive a decedent's property. (28 Am.Jur. 9 and 10, p. 12.) While such tax is assessed upon the value of property so transmitted, the rates and exemptions are based upon the relationship of the recipient to the decedent. (28 Am.Jur. 4, p. 9.) Accordingly, a cardinal purpose of the inheritance tax law would be to coordinate its assessment as closely as possible with the substantive probate *124 law regulating the distribution of the decedent's estate."
 It follows from what we have heretofore said regarding the conclusive nature of the decree with respect to the status of George in the heirship proceeding, that the judgment appealed from must be, and is, affirmed.
 Gibson, C.J., Shenk, J., Traynor, J., and Spence, J., concurred.
 SCHAUER, J.,
 Dissenting.
 In my view the majority opinion errs in holding that the decree in the so- called heirship proceeding is conclusive as to the tax proceeding and that the argument of the State Controller constitutes an attack on the heirship decree. Because such opinion may well be cited for far-reaching effects in the future I deem it proper to record here the principal arguments against it.
 If established principles were adhered to, this appeal should be resolved primarily by application of pertinent sections of the California Inheritance Tax Law (Rev. & Tax. Code, 13301 et seq.) and secondarily on the statutory and decisional law of adoption. Applying the tax law consistently with the adoption law leads to the conclusion that George Radovich should be regarded, for purposes of assessing the inheritance tax, as a Class D rather than a Class A transferee. More specifically, it will appear from the facts and law hereinafter elucidated, that the very decree which George relies on as adjudicating his Class A status, conclusively establishes facts leading to the conclusion that he is in Class D. Hence, the judgment appealed from should be reversed.
 Following the death of Jack Radovich, George Radovich petitioned the probate court for a "Decree Determining Interests" in the decedent's estate. The court in that proceeding found that the decedent had died intestate, and had left no surviving spouse, issue, descendants of any deceased child, or parents; however, that decedent had left surviving him certain brothers and sisters and their descendants, all but one of whom are residents of Yugoslavia.
 The court further found that "the decedent and the natural parents of George Radovich, and George Radovich, then known as George Vukoye and 17 years of age, entered into an oral agreement in the year 1934 ... [under the terms of which] the decedent promised and agreed that if said George Radovich would go to live with decedent and be decedent's son, decedent would give to said George Radovich all of the *125 rights of a natural son of decedent and would regard said George Radovich as decedent's own son and that he would adopt said George Radovich"; that George's natural parents, in reliance upon the agreement, relinquished to decedent all of their rights in George as natural parents; that George accepted the oral agreement and immediately went to live with decedent and thereafter, until decedent's death in 1953, performed all of the duties of a child towards a parent; that during the period in which George resided with the decedent, the decedent publicly acknowledged George as his own son and heir to his estate, but he "did not institute any statutory proceedings for adoption of said George Radovich; ... [and that] pursuant to said oral agreement and his [George's] performance thereof, and by reason of the failure of decedent to fully perform the obligations assumed by him to be performed under said oral agreement, George Radovich occupies in equity the equitable status of an adopted son and by reason thereof is entitled to distribution of all of the Estate of the decedent, except that portion thereof which [George agreed to transfer to the Yugoslavian relatives]." (Italics added.) The court ordered a distribution of the estate in accordance with this latter finding. Such distribution was made, and the court order has since become final.
 The inheritance tax appraisers determined that George is a stranger to the blood of the decedent, and assessed the inheritance tax based on the amount of the estate passing to George at the rate and with the exemption applicable to strangers in blood. George, claiming to be entitled to the more beneficial tax rate and exemption accorded to an adopted child, objected to this assessment, and instituted the present proceeding. The trial court found (more accurately, concluded, in the proceeding now before us on direct attack) that under the decree of the probate court, "George Radovich was able to succeed to the decedent's estate and be distributed the property of said estate, only by virtue of the establishment of his status as an adopted son, and that the said George Radovich inherited the property from the said estate as a result of having the status of an adopted son"; and that "the determination of the Probate Court that said George Radovich had the status of an adopted son of the decedent was the determination that said George Radovich was adopted by the decedent in conformity with the laws of this state when under the age of 21 years." The court concluded that George, as an adopted son, was a Class A transferee *126 under the inheritance tax statutes and should be taxed accordingly.
 As is hereinafter developed, the "findings" of the trial court in this proceeding that the court sitting in exercise of probate jurisdiction had decreed that George had been adopted in conformity with the laws of this state while under the age of 21 years, that his status as a lawfully adopted son was established, and that he inherited the decedent's estate as an adopted son, are untenable as a matter of law. Moreover, the following analysis of the controlling inheritance tax statutes, in the light of the findings and decree in the heirship proceeding, appears to me to demonstrate that George has the status of a Class D, rather than a Class A, transferee.
 Inheritance tax is imposed upon the right to succeed to the property of the estate rather than upon the property itself (Estate of Bloom (1931), 213 Cal. 575, 580 [4] [2 P.2d 753]), and is imposed not merely upon the passing of property by inheritance or under a will, but upon "every transfer" subject to the inheritance tax statutes (Rev. & Tax. Code, 13401). It is intended that the passing of "any property" from the estate of a decedent be subject to the tax imposed (see Rev. & Tax. Code, 13304), and the amount of tax is determined by the relationship of the transferee to the decedent (In re Miller (1947), 31 Cal.2d 191, 199 [4] [187 P.2d 722]). A transferee is "any person to whom a transfer is made, and includes any legatee, devisee, heir, next of kin, grantee, donee, vendee, assignee, successor, survivor, or beneficiary." (Rev. & Tax. Code, 13306.) The statute specifies four different classes of transferees; a Class A transferee includes one "whose relationship to the decedent is that of a child adopted by the decedent in conformity with the laws of this State, provided such child was under the age of 21 years at the time of such adoption." (Rev. & Tax. Code, 13307, subd. (b).)
 George Radovich was a transferee within the meaning of the above stated rules, and as such the transfer to him was subject to the tax. Under the facts of this case it is clear that if George is not a Class A transferee as an adopted son then he is a Class D transferee as a stranger to the blood of the decedent. Thus, the sole question to be determined is whether, within the meaning of the controlling tax statute, George can be classified as an adopted son for purposes of computation of the applicable tax.
 A statutory grant of exemption from taxation is "strictly *127 construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed." (Cedars of Lebanon Hospital v. County of Los Angeles (1950), 35 Cal.2d 729, 734 [1] [221 P.2d 31, 15 A.L.R.2d 1045]; see also Cypress Lawn C. Assn. v. San Francisco (1931), 211 Cal. 387, 390 [1] [295 P. 813].) While it has been held that the rule of strict construction of statutory exemptions in favor of the state does not apply to the rate sections of the Inheritance Tax Law (Rev. & Tax. Code, 13401-13404) (Estate of Morris (1943), 56 Cal.App.2d 715, 727 [5] [133 P.2d 452]), such rule does apply to the exemption sections (Rev. & Tax. Code, 13801-13804) (Estate of Steehler (1925), 195 Cal. 386, 396 [3] [233 P. 972]). Since the various classes of transferees are accorded different tax treatment under both the rate and exemption statutes (e.g., a transferee included in Class A is taxed in accordance with both the Class A rates (Rev. & Tax. Code, 13401) and the Class A exemption (Rev. & Tax. Code, 13801)), it follows that the two types of statutes should be construed in pari materia (see In re Newberry's Estate (1953), 138 W.Va. 296 [75 S.E.2d 851, 852 [1], 40 A.L.R.2d 624]), and the same rule (whether of strict or of liberal construction) should be applied to each type.
 It is established that succession to the property of a decedent is a privilege, not an inherent right, and that the various states have plenary power over property subject to inheritance. (See Stebbins v. Riley (1925), 268 U.S. 137 [45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454]; Magoun v. Illinois Trust & Sav. Bank (1898), 170 U.S. 283 [18 S.Ct. 594, 42 L.Ed. 1037]; United States v. Perkins (1896), 163 U.S. 625, 629-630 [16 S.Ct. 1073, 41 L.Ed. 287].) Thus a succession tax statute may constitutionally impose a tax on transfers in which the rate does not vary with the relationship of the transferee to the decedent, and which does not allow any exemptions at all based on relationship. (E.g., see the statutes of Arizona (Ariz. Rev. Stats., 42-1510); Florida (Fla. Stats., 198.02); and Mississippi (Miss. Code, 9264).) Since the fixing of different rates and exemptions among classes based on degree of relationship is thus a matter of legislative grace, not required by or obnoxious to either federal or state Constitutions (see Estate of Watkinson (1923), 191 Cal. 591, 597-598 [3-5] [217 P. 1073]; Estate of Potter (1922), 188 Cal. 55, 63 [6-7] [204 P. 826]), it follows that both the rate and exemption statutes should properly be considered as *128 subject to the rule that statutory tax concessions are to be construed liberally in favor of the state and strictly against these claiming the indulgence offered.
 Were it not for the specific provisions of section 13307, subdivision (b), of the Revenue and Taxation Code (quoted ante, p. 119), classifying a child adopted in conformity with the laws of this state as a Class A transferee, such adopted child would be subject to inheritance tax at the rates and exemption applicable to strangers. (See In re Strunk's Estate (1952), 369 Pa. 478 [87 A.2d 485, 487]; 28 Am.Jur. 102, 196.) Although the beneficial tax status of a natural child has been extended in California to children legally adopted while under the age of 21, neither this extension nor the actual adoption can obliterate the fact that genetically such children are strangers to the blood of the foster parents. (See Estate of Kruse (1953), 120 Cal.App.2d 254, 257 [260 P.2d 969]; see also In re Darling (1916), 173 Cal. 221 [159 P. 606].) Indisputably, an adjudication that a child bears the equitable status of an adopted child does not effect a change in the child's actual status of a blood stranger to the adoptive parent. The provisions of section 13307, subdivision (b), extend the beneficial rates and exemptions of sections 13401 and 13801 only to children adopted in conformity with California law. Adoption is purely statutory in origin and nature, and there cannot be an adoption without compliance with the statutory requirements. (Matter of Cozza (1912), 163 Cal. 514, 522 [126 P. 161, Ann.Cas. 1914A 214].) There can be neither an equitable adoption (see In re Olson's Estate (1955), 244 Minn. 449 [70 N.W.2d 107, 110]) nor an adoption by estoppel (Adoption of Parker (1948), 31 Cal.2d 608, 617 [9] [191 P.2d 420]). If the rule of strict construction of tax exemption statutes is applied here, then it must be concluded that the Class A exemption and rate statutes cannot be extended to include a child not legally adopted, even though he bears the "equitable status" of an adopted child.
 It appears to me, from the foregoing discussion, that the only way George Radovich could lawfully become entitled to the status of a Class A transferee would be to establish that he was "adopted by the decedent in conformity with the laws of this State, provided [he] was under the age of 21 years at the time of such adoption." (Rev. & Tax. Code, 13307, subd. (b).) As noted above, adoption is purely statutory in origin and to be valid must conform to the applicable statutes; here the findings and decree relied on by George to *129 establish his equitable right to the transfer of decedent's property likewise establish that decedent "did not institute any statutory proceedings for adoption." The only proceeding relied on to give George the status of an adopted child is the probate proceeding to determine interests in the estate of the decedent. That decree was not entered until George was 37 years of age.
 It is urged that the "laws of this State" contemplated by section 13307, subdivision (b) of the Revenue and Taxation Code include not only the statutory law but also the decisional law, and that the decree of the probate court therefore satisfies the requisites of the tax statute. Even assuming that the probate decree declaring that George had the equitable status of an adopted son was tantamount to a decree of adoption in conformity with the laws of this state, it is obvious that George still does not qualify for Class A exemption status within the terms of section 13307, subdivision (b) because the proceeding relied on to give George an adopted status does not bring him within the age-at-adoption qualification. Manifestly, the conclusion that George at the age of 37 was by virtue of private contract in the equitable position of an adopted son, cannot accomplish his legal or equitable adoption before the age of 21.
 No California case directly in point has been cited by the parties, nor has any been discovered by independent research, on the question of the effect of an equitable decree such as in the present case on the status taxwise of the child involved. However, there is substantial authority from other jurisdictions which supports the conclusion that the probate decree did not adjudicate that George was either the adopted son or the legal heir of the decedent. These authorities establish the following general principles:
 "[A]n adoption can be brought about only by a following of the statutory procedure therefor; consequently, a mere executory agreement to adopt, with nothing more, is not an adoption, and the child is not an heir of the parties agreeing to adopt it" (2 C.J.S. 399, 27; Parnelle v. Cavanaugh (1941), 191 Ga. 464 [12 S.E.2d 877, 878 [1]]; Malaney v. Cameron (1916), 99 Kan. 70, 71 [161 P. 1180, 1181 [1]]), for the right to take as an heir exists only by operation of law (O'Connor v. Patton (1926), 171 Ark. 626 [286 S.W. 822, 826]; Jordan v. Abney (1904), 97 Tex. 296 [78 S.W. 486, 489]), and cannot be created by contract (Wiseman v. *130 Guernsey (1922), 107 Neb. 647 [187 N.W. 55, 56 [1]]; Couch v. Couch (1951), 35 Tenn.App. 464 [248 S.W.2d 327, 334 [5]]) or by estoppel (Glass v. Glass (1952, Ohio), 125 N.E.2d 375, 377 [3, 4]). However, under the principle that equity will consider that done which ought to have been done, it is generally held that a contract by a person to adopt the child of another as his own, accompanied by a virtual, although not a statutory adoption, may be enforced upon the death of the obligor by adjudging the child entitled to a natural child's share in the property of an obligor dying intestate. (2 C.J.S. 400, 27, and cases cited therein.) "In upholding such a remedy, the courts do not hold that the child is entitled to the right of inheritance as an heir. They do not undertake to change the status of either party, but merely to enforce a contract which has been fully performed on one side." (2 C.J.S. 401, 27; In re Painter's Estate (1954), 246 Iowa 307 [67 N.W.2d 617, 619]; Hickox v. Johnston (1923), 113 Kan. 99 [213 P. 1060, 1061, 27 A.L.R. 1322]; Starnes v. Hatcher (1908), 121 Tenn. 330 [117 S.W. 219, 223]; but see Crawford v. Wilson (1913), 139 Ga. 654 [78 S.E. 30, 32 [1], 44 L.R.A. N.S. 773]; Lynn v. Hockaday (1901), 162 Mo. 111 [61 S.W. 885, 889, 85 Am.St.Rep. 480].) When the child takes property in such a case it is as a purchaser by virtue of the contract (Couch v. Couch (1951, Tenn.), supra, 248 S.W.2d 327, 334 [6]) and by way of damages or specific performance (Minetree v. Minetree (1930), 181 Ark. 111 [26 S.W.2d 101, 104 [3]]; Miller v. Elliot (1943), 266 App.Div. 428 [42 N.Y.S. 2d 569, 570]). The child does not become, in a legal sense, the child of the adopting parents except for the purpose of receiving title to their property (Besche v. Murphy (1948), 190 Md. 539 [59 A.2d 499, 504 [9, 10]]) and is not entitled to letters of administration (State ex rel. Balshaw v. Montgomery (1940), 237 Mo.App. 678 [146 S.W.2d 129, 132]). The child shares in the estate of the deceased foster parent as though his own child but not as such. In order to do justice and equity, as far as possible, to one who, though having filled the place of a natural born child, through inadvertence or fault has not been legally adopted, the court enforces a contract under which the child is entitled to property, declaring that as a consideration on the part of the foster parents a portion of their property will pass on their death to the child. (Chehak v. Battles (1907), 133 Iowa 107 [110 N.W. 330, 335, 12 Ann.Cas. 140, 8 L.R.A.N.S. 1130].) And in such case, property recompense is generally measured in the amount *131 fixed by the statutes of descent and distribution. (Caulfield v. Noonan (1940), 229 Iowa 955 [295 N.W. 466, 471 [1]]; Hickox v. Johnston (1924), 115 Kan. 845 [224 P. 905, 907]; 1 Am.Jur. 631, 20.) But in the absence of statutory adoption, it cannot be held that by enforcing such a contract a legal adoption was effected (Roberts v. Sutton (1947), 317 Mich. 458 [27 N.W.2d 54, 57-58 [3, 4]]; In re Olson's Estate (1955), supra, 244 Minn. 449 [70 N.W.2d 107, 110 [2-4]]; Franks v. Horrigan (1930), 120 Neb. 1 [231 N.W. 27, 29]), or that the child became an heir, even where the contract provided for a right of inheritance (Caulfield v. Noonan, supra; Chehak v. Battles, supra). (For compilation and analysis of authorities from many jurisdictions on the subject of "Specific performance of, or status of child under, contract to adopt not fully performed," and the possible applicability therein of the doctrine of estoppel, see notes in 171 A.L.R. 1315, 1326; 142 A.L.R. 84, 122; 27 A.L.R. 1325, 1365.)
 Applying the foregoing principles to the present case, it becomes clear that the order of the probate court adjudicated no more than that by reason of the contract between the decedent and George's natural parents, and what was done by the latter and by George toward performing it, George became entitled to succeed to the decedent's estate to the same extent that he would have taken had he been legally adopted. In order to do equity, the probate court enforced the contract insofar as property rights were concerned, but the order did not declare George to be an heir or purport to change his legal status; George remained a legal stranger for such things as inheritance tax. The "finding" of the trial court in this proceeding that the only way George could inherit was as an adopted child, and that he must therefore be treated as such for inheritance tax purposes, falls because George does not either in fact or in law take as an heir. He takes because of the contract performed by him and his parents and the breach thereof by decedent.
 Despite the fact that approximately 40 other jurisdictions have inheritance tax statutes similar to those in California, whereby a legally adopted child is allowed a higher exemption and taxed at a lower rate than ordinarily applies to strangers to the blood of the decedent, only three cases have been found which have considered a problem similar to that before us here. All three of those cases support the conclusions heretofore reached.
 In the case of In re Clark's Estate (1937), 105 Mont. 401 *132 [74 P.2d 401, 412 [18], 114 A.L.R. 496], there had been a contract to adopt the child, but the legal adoption had never been completed. The child was left certain property by the will of the foster parent, and the inheritance tax authorities assessed the child on the basis that he was a stranger to the blood of the decedent. The child claimed that he was entitled to the more beneficial tax treatment accorded to a "child adopted as such in conformity with law" (Mont.Rev. Codes 1935, 10400.2 [now Mont.Rev. Codes, 91- 4409]), by virtue of the contract of adoption, fully performed on his part. The court reviewed the general rules with respect to contracts of adoption (as cited ante), and concluded that the trial court had correctly held that, whether or not the child could have enforced the contract against the estate of the decedent, he was not "a child adopted as such in conformity with law," and the determination of the taxing authorities was sustained.
 In Lamb's Estate v. Morrow (1908), 140 Iowa 89 [117 N.W. 1118, 18 L.R.A.N.S. 226], the recipient of property from the decedent claimed that he was entitled to the more favorable tax treatment accorded to an adopted child. He argued that although he had not been legally adopted, he had been equitably adopted, and that in fixing the tax the equitable aspects of the case should be considered. The court stated, beginning at page 1120: "The answer to this is that the case is not in equity, and if it were, the matters relied on cannot make one an heir if in fact they do not in law establish that relation. ... Holmes does not, in any event, take as an heir." The same answer is equally applicable to the contentions of the child here.
 In Wooster v. Iowa State Tax Com. (1941), 230 Iowa 797 [298 N.W. 922, 141 A.L.R. 1298], the child had not been adopted under statutory procedure, but claimed to have been adopted by estoppel. It was conceded that the foster parents were estopped to deny the adoption. Property passed to the child under the will of a foster parent, and the question was whether the child was entitled to have the transfer assessed at the lower inheritance tax rates and higher exemption applicable to a "legally adopted child ... entitled to inherit under the laws of this state." (Code of Iowa 1939, 7313 [now Iowa Code, 450.10].) After reviewing the authorities, the court stated:
 "The conclusion that Grace S. Wooster was not a legally adopted child of Delia B. Wooster appears inescapable. She *133 did not have the status of an adopted child or any right of inheritance as such. A decree establishing her rights in the property of the deceased foster parents could not have changed her previous status to that of an adopted child. The principle involved in such equitable proceedings is property recompense measured in the amount fixed in the statutes of descent and distribution ..."
 "Appellee argues that the state is in such privity with Delia B. Wooster as to be bound by the estoppel against her. In support of this contention it is said that the state allows the party to fix the status of the child and should be bound by the status so fixed by its authority. With this statement we do not agree. The state, through its legislative enactments, allows the status of an adopted child to be fixed by one method only, to wit, by statutory adoption. When such status has been thus fixed the legally adopted child becomes entitled to the exemption and classification provided by statute for property passing to a legally adopted child. Obviously, when a party fails to take the steps required by the state to effectuate a legal adoption the estoppel against such party resulting from such noncompliance with the statute does not bar the state from standing upon the facts as they actually exist in making classifications for inheritance tax purposes."
 "Nor do we agree that a decree establishing appellee's rights would constitute a judgment in rem determining her status which would be binding upon the taxing authorities. One reason for this is that appellee never had the status of an adopted child and the courts 'do not undertake to change the status.' Such decree would merely establish her property rights." (Wooster v. Iowa State Tax Com. (1941, Iowa), supra, 298 N.W. 922, 925 [1-4].) The reasoning in the Wooster case is equally pertinent here. (See also Adoption of Parker (1948), supra, 31 Cal.2d 608, 617 [9].)
 The so-called "heirship" proceedings in California are not limited to those persons who claim to be technical heirs of the decedent. Rather, the statute providing for such proceedings states that "any person claiming to be an heir of the decedent or entitled to distribution of the estate or any part thereof" may institute such proceedings. (Prob. Code, 1080, italics added.) The mere determination of the rights to distribution in such a proceeding is not necessarily a determination of technical heirship. George petitioned the court for a "Decree Determining Interests" in the decedent's estate. The court determined George's interest, and decreed distribution *134 of the estate to him, not because he was an adopted son of decedent, but because he should have been decedent's adopted son, and because, under the facts of this case, he had higher equities than any other claimant. Such a decree did not, nor could it, adjudicate George's status to be other than it factually was--i.e., a stranger to the blood of the decedent--and it did not purport to affect his status for inheritance tax purposes.
 The order in the instant proceeding (fixing the inheritance tax) is distinct from that in the heirship proceeding. Each order is appealable (Prob. Code, 1240; see also Attorney General v. Superior Court (1955), 41 Cal.2d 249, 251 [4] [259 P.2d 1].) Such orders have "the force and effect of a judgment in a civil action" (Rev. & Tax. Code, 14672), and "the provisions of the Code of Civil Procedure relative to judgments, new trials, appeals, attachments, and execution of judgments, so far as applicable, govern all [such] proceedings ..." (Rev. & Tax. Code, 14671.) "[I]n fixing the inheritance tax the probate court may consider matters not before it in the distribution of an estate. ... The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will. (In re Lloyd's Estate, 106 Cal.App. 507 [289 P. 892].)" (Estate of Rath (1937), 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].) The Lloyd case referred to in the Rath opinion recognizes that an inheritance tax proceeding is completely separate from a proceeding to determine distribution of the estate, and that an adjudication of tax status in the one proceeding will not prevent a different adjudication of status with regard to the right to take in the distribution proceeding. The converse is equally true where, as here, the distribution proceeding only purports to determine the right to take and not the tax status of the one taking.
 The case of Johnson v. Superior Court (1929), 102 Cal.App. 178 [283 P. 331], is not opposed to the principles enunciated herein. The Johnson case merely holds that the probate court has power to determine the rights of one claiming an interest in the decedent's estate by virtue of an executory contract to adopt. That the probate court has such power, and that it exercised such power in the present case, is undisputed. But the determination that George was equitably *135 in privity with the estate and therefore entitled to distribution of the property does not determine in what manner George (or the transfer) is to be treated for tax purposes. The right to distribution of the estate having been determined, the transfer and the transferee became subject to the inheritance tax laws. The duly appointed inheritance tax appraiser classified George as a Class D transferee and reported the inheritance tax on such classification. The coadministrators and George filed objections to the appraiser's report pursuant to the authorities of section 14510 of the Revenue and Taxation Code. At the hearing it was the duty of the court to presume that the report of the tax appraiser was correct and the burden was upon the objector to proceed in support of his objection. (Rev. & Tax. Code, 14512.) The inheritance tax authorities in setting the tax were entitled to fix George's tax status under the tax laws in accordance with the facts as they actually stood. One of those facts was the probate decree of distribution, and this the tax authorities relied on for exactly what it held--that George, under equitable principles, was entitled to take a certain amount of property. The probate decree determined how much property George was to take and why he was entitled to it, but did not determine in what taxable capacity he was to take it. The latter determination was made by the court in this entirely separate and distinct proceeding. Such determination is erroneous as a matter of law and should, if the law were followed, lead to a reversal.
 McComb, J., concurred.
NOTES
[fn. *] *. George agreed in writing to transfer and assign $55,000 of the estate to the blood relatives in Yugoslavia.