# IN THE COURT OF APPEALS OF IOWA

No. 18-0177
Filed October 9, 2019

IN THE MATTER OF THE TRUST OF FLOYD F. KALLMER,

L.K.,
        Appellant/Cross-Appellee,

vs.

JAMES KALLMER and WILLIAM KALLMER,
        Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Buena Vista County, David A. Lester,

Judge.

        L.K. appeals the district court's refusal to appoint a co-guardian ad litem and

its determination he is not a beneficiary of a trust.  James and William Kallmer

cross-appeal an order requiring the trust to pay L.K.'s attorney fees for this appeal.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**

        Katie F. Morgan (until withdrawal) and Tisha M. Halverson of Klay,

Veldhuizen, Bindner, De Jong & Halverson, P.L.C., Paullina, guardians ad litem

for appellant.

        Michael R. Bovee of Montgomery, Barry, Bovee, Steffen & Davis, LLP,

Spencer, for appellees.

        Heard by May, P.J., Scott, S.J.* and Gamble, S.J.*

        *Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAY, Presiding Judge.**

Who are the beneficiaries of Floyd Kallmer's testamentary trust? Floyd's living sons, James and William Kallmer, claim they are the only beneficiaries. L.K. disagrees. He claims he was equitably adopted by Floyd's deceased son, Robert. Therefore, he claims, he is a third beneficiary of Floyd's trust.

The district court agreed with James and William. The court granted summary judgment in their favor. L.K. appeals through his guardian ad litem (GAL). He contests both the summary-judgment ruling and a prior order declining to appoint a co-GAL in Thailand.

James and William cross-appeal. They contest a post-summary-judgment ruling requiring Floyd's trust to pay the GAL's appellate attorney fees.

We conclude (1) the district court did not abuse its discretion in refusing to appoint a co-GAL; (2) the district court was correct in granting summary judgment and declaring James and William are "the only beneficiaries" of Floyd's trust; and (3) the district court erred in assessing costs of this appeal prior to the appeal.

## I.    Background Facts and Proceedings

Floyd Kallmer is father to three sons—Robert, William, and James. In 1997, Floyd executed a will. It provided for the creation of a testamentary trust. The trust's net income would be distributed to Floyd's wife for life. Upon her death, the trust would terminate. The "property remaining" would then be "distribute[d] to [Floyd's] children, share and share alike, provided that if any of [Floyd's] children should not be living, such child's share shall go to his children, share and share alike." Floyd died in 2001.

Robert spent his winters in Thailand. There he met a woman named Thongmaoun, also known as Fa. At the time they met, Fa was married to another man. That marriage was dissolved in February 2005.

In October 2005, Fa gave birth to L.K. L.K.'s birth certificate and a consular report of birth abroad both list Robert as his father. Fa and Robert married in December 2006.

Robert had doubts about whether L.K. was his biological child. Even so, Robert loved L.K. and treated him as his son.

In 2009, Robert amended his own personal trust. The amendment named L.K. as Robert's son and a beneficiary of Robert's trust.

Robert died in 2010. In 2012, Floyd's trustees applied for the appointment of a GAL "to represent the potential interests" of L.K., "the possible son" of Robert. The application also asked the court to "[d]irect that the Trust shall pay" the GAL's fees. The district court entered an order granting both requests.

Floyd's wife died in 2014. In February 2015, Floyd's trustees filed an application for the court to ascertain the trust beneficiaries and direct the distribution of the trust assets. The court reappointed L.K.'s GAL and ordered Floyd's trust to pay her fees.

In July 2015, the GAL applied for the appointment of a co-GAL located in Thailand "to assist her in interviewing [L.K.] as well as others, requesting documents from the Thailand government, and assist [the GAL] in other duties that require her to conduct a proper investigation." James and William resisted.

On August 21, 2015, the court entered an order declining to appoint a co-GAL. "In lieu of" appointing a co-GAL, the court ordered L.K. to submit to DNA

testing "for the purpose of establishing whether or not" he is "the biological child of Robert."

The DNA testing was completed in May 2017. It concluded "the probability of paternal relatedness" between Robert and L.K. is "0%."

William and James then filed a motion for summary judgment. They asked the court to enter an order declaring they "are the equal and only beneficiaries" of Floyd's trust. L.K. resisted and, moreover, moved for summary judgment in his own favor. He argued he is Robert's child by equitable adoption. Therefore, he should "receive Robert Kallmer's share" of Floyd's trust "as Robert's child."

The district court granted William and James's motion and denied L.K.'s motion. The court rejected L.K.'s equitable-adoption theory. The court also concluded that, "based on the clear language of Floyd's trust," L.K. is "not entitled to receive Robert's distributive share" of the trust's assets. Instead, the court declared, William and James "are the only beneficiaries" of Floyd's trust "with each being entitled to receive an equal distribution" of its assets.

L.K. filed a motion to amend or enlarge. Among other things, L.K. requested a ruling as to whether L.K.'s GAL "would be required to continue to represent L.K. on appeal, and if so, whether the Trust, L.K., or some other person or entity should be responsible for" the GAL's fees. In their response, James and William argued (1) the GAL is not required to appeal; and (2) if an appeal is pursued, L.K. should be responsible for his own appellate attorney fees. They noted "L.K. is the beneficiary of a substantial trust" established by Robert.

On December 28, 2017, the court entered an order granting L.K.'s motion in part. Of relevance here, the court ordered the GAL "is still charged with the

obligation to advocate in L.K.'s best interest, including seeking to appeal this court's rulings, if [the GAL] deems that to be in [L.K.'s] best interest." The court further ordered that Floyd's trust "must continue to pay" the GAL's fees, "including attorney fees incurred appealing rulings of this court."

On January 26, 2018, L.K. filed a notice of appeal. James and William timely cross appealed.

## II. Standard of Review

Both parties claim our review of all issues is de novo. We disagree. We review summary judgment rulings "for correction of errors of law." *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018). We review the district court's selection of guardians ad litem for abuse of discretion. *In re Guardianship of Kliege*, No. 15-0851, 2016 WL 1760729, at *2 (Iowa Ct. App. Apr. 27, 2016). We also review an assessment of costs for an abuse of discretion, which will be found "when a court's exercise of discretion is clearly erroneous." *Solland v. Second Injury Fund of Iowa*, 786 N.W.2d 248, 249 (Iowa 2010).

## III. Analysis

### A. Appointment of Co-GAL

We begin by addressing L.K.'s argument that the district court should have appointed a co-GAL in Thailand. Before reaching the merits of this issue, though, we must confirm our jurisdiction. *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014).

The order refusing to appoint a co-GAL was filed on August 21, 2015. Under Iowa Code section 633.36 (2015), "[a]ll orders and decrees of the" probate court "are final decrees." Under our appellate rules, a notice of appeal must be

filed within thirty days of a final order or judgment. Iowa R. App. P. 6.101(1)(b). This rule is jurisdictional: if the deadline is missed, "the court has no jurisdiction to hear the appeal." *Concerned Citizens of Se. Polk Sch. Dist. v. City Dev. Bd.*, 872 N.W.2d 399, 402 (Iowa 2015).

It would seem to follow, then, that L.K. was required to file his notice of appeal within thirty days after the August 21, 2015 order. He did not. The notice was filed on January 26, 2018, more than two years later. It would appear, therefore, that we lack jurisdiction to consider the co-GAL issue.

As L.K. points out, however, our supreme court has held section 633.36 does not apply to "all orders." *In re Estate of Troester*, 331 N.W.2d 123, 126 (Iowa 1983). In *Troester*, the court held section 633.36 does not apply to "ordinary orders" that are "normally found in" civil actions. *Id.* On the other hand, section 633.36 does apply to "orders of a court sitting in probate that determine the entitlement of the estate proceeds and provide authority and guidance to the *fiduciary*." *Id.* (emphasis added)

Following *Troester*, we have twice held that section 633.36 applies to orders concerning the appointment or removal of a "fiduciary." *See In re Estate of Woodroffe*, No. 11-0900, 2012 WL 3854642, at *2–3 (Iowa Ct. App. Sept. 6, 2012); *In re Guardianship of Seymour*, No. 09-1484, 2010 WL 4967989, at *2 (Iowa Ct. App. Dec. 8, 2010). In *Seymour*, we held an order removing one guardian and appointing another was a final order under section 633.36. 2010 WL 4967989, at *2. In *Woodroffe*, we held an order denying a "petition for removal of the executor" was final under section 633.36. 2012 WL 3854642, at *3.

The August 21, 2015 order denied L.K.'s request to appoint a co-GAL. Not unlike the orders in *Woodroffe* and *Seymour*, the August 21, 2015 order concerned the appointment of a "fiduciary." *See Troester*, 331 N.W.2d at 126. One could argue, therefore, that the August 21, 2015 order should be treated as a "final order" under Iowa Code section 633.36. *See In re C.D.*, 509 N.W.2d 509, 513 (Iowa Ct. App. 1993) (recognizing "the role of guardian ad litem" is a "fiduciary position[]").

But not all fiduciaries are alike. As L.K. notes, guardians and executors are specific to probate cases. They are not standard participants in non-probate civil litigation. But GALs are. They are routinely appointed in non-probate cases. Their appointment is authorized by the Iowa Rules of Civil Procedure, which certainly apply outside of probate. *See* Iowa Rs. Civ. P. 1.211, 1.212.

We conclude, therefore, the August 21, 2015 order was the sort of "ordinary order" that is "normally found" in non-probate civil actions. *Troester*, 331 N.W.2d at 126. So, under *Troester*, it was not a "final order" under section 633.36. Therefore, no immediate appeal was required; rather, L.K.'s 2018 notice of appeal was timely. Our concerns regarding jurisdiction are satisfied.

We turn next to the merits. No one disputes that the appointment of a co-GAL in Thailand would have resulted in substantial expense for Floyd's trust. But L.K. has not cited, and we have not found, any evidence suggesting any reasonable probability that a co-GAL might have allowed L.K. to reach a different outcome in this matter.

We will not purposefully require the district court to waste money. The court did not abuse its discretion. We affirm.

**B.     Summary Judgment**

We turn next to the summary judgment ruling.  L.K. argues he was equitably adopted by Robert.   Therefore, he contends, the district court should have recognized him as a beneficiary of Floyd's trust.

Our supreme court has long recognized the theory of equitable adoption.  *In re Estate of Painter*, 67 N.W.2d 617, 618 (1954).  Under this theory, a child seeking to inherit must prove (1) the decedent entered an unexecuted contract or agreement to adopt the child; and (2) the child performed her or his end of the bargain.  *Id.*; *accord In re Estate of Thompson*, No. 08-0120, 2008 WL 4877762, at *1 (Iowa Ct. App. Nov. 13, 2008).

L.K. concedes he cannot prove these elements.  L.K. suggests, however, that the "current test in Iowa to meet equitable adoption does not conform to the society we live in."  He asks us to abandon Iowa's traditional "contract test" and replace it with a four-prong "relationship test."

We decline.  "We are not at liberty to overrule controlling supreme court precedent."  *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).  We affirm the district court's grant of summary judgment in favor of William and James.

**C.     GAL Fees on Appeal**

James and William argue the district court erred in ordering the trust to pay for L.K.'s appellate GAL fees in the event of an appeal.  We agree.

When a GAL serves as an attorney, her appellate attorney fees may be taxed as costs.  *See Grant v. Laurie*, 533 N.W.2d 563, 564–65 (Iowa 1995); *see also* Iowa Code §§ 625.1, .5, .14.  But *when* should those costs be taxed?  Iowa Code section 625.1 provides "[c]osts shall be recovered by the successful against

the losing party." Appellate court rule 6.1207 provides "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." But courts cannot tell who is the "successful party"— and who is the "losing" or "unsuccessful" party—until the appeal is complete. So costs cannot be taxed until the appeal is complete.

We must conclude, therefore, the district court erred in entering a pre-appeal order requiring the trust to pay the GAL's appellate fees. As to that order, we reverse. *See Grant v. Iowa Dist. Ct.*, 492 N.W.2d 683, 685 (Iowa 1992).

Now that the appeal is complete, however, it is appropriate to consider who should pay the GAL's appellate fees. While Rule 6.1207 presumes that fees will usually be "taxed to the unsuccessful party," it leaves discretion for this court to order "otherwise." Ordinarily, though, our exercise of that discretion is "control[led]" by the "relative success of the parties on the merits." *Solland*, 786 N.W.2d at 249. So, in most cases, no costs should be assessed against a wholly successful party.

There is one exception. If the successful party initiated the litigation that required appointment of a GAL, our law sometimes permits recovery of the GAL's fees against the successful party. *Laurie*, 533 N.W.2d at 565. Specifically, Iowa Code section 625.5 provides "[a]ll costs accrued at the instance of the successful party, which cannot be collected of the other party, may be recovered on motion by the person entitled to them against the successful party."

William and James are clearly the successful parties here. L.K. is the unsuccessful party. So, on remand, the district court shall tax the GAL's appellate fees against L.K. Iowa Code § 625.1; Iowa R. App. P. 6.1207. If the fees "cannot

be collected" from L.K., however, the GAL may file a motion under Iowa Code section 625.5.

**IV.    Conclusion**

We affirm the district court's refusal to appoint a co-GAL.  We affirm the grant of summary judgment in favor of William and James.  We reverse the district court's assessment of GAL costs on appeal.  We remand with the instructions provided above.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**